Filed 11/14/14  Certified for Publication (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MONIQUE HUDSON, | B247593, B248983 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC458667) |
| v. | |
| COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LEROY BACA, and LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION, | |
| Defendants and Respondents. | |

Appeal from judgments of the Los Angeles Superior Court, Amy D. Hogue and Luis A. Lavin, Judges.  Judgments reversed with directions.

Green & Shinee, Elizabeth J. Gibbons, for Plaintiff and Appellant.

Hausman & Sosa, Jeffrey M. Hausman, Larry D. Stratton for Defendants and Respondents Los Angeles County Sheriff's Department, and Leroy Baca, Sheriff.

Robert S. Van Der Volgen, Jr., Johanna M. Fontenot, Michael D. Herrera for Defendant and Respondent Los Angeles County Employees Retirement Association.

_____

A former deputy in the Sheriff's Department of Los Angeles County, while on temporary disability leave resulting from knee injuries, was discharged from her employment on grounds later found by the county Civil Service Commission to be unjustified. During the long Civil Service Commission proceedings leading to its order restoring her employment, however, the county's retirement authority granted her a disability retirement, without benefits, and she thereafter withdrew her accumulated retirement contributions. Her suit in the Los Angeles Superior Court sought restoration of her employment as a deputy sheriff, and the retirement authority's reevaluation of her disability status in light of her rehabilitation following knee surgeries. She appeals from trial court rulings and resulting judgments that have thwarted that result.

## Background

On April 1, 2011, appellant Monique Hudson filed a complaint against the Sheriff's Department of Los Angeles County and Sheriff Leroy Baca,[1] and the Los Angeles County Employees Retirement Association (LACERA).[2] The complaint's first cause of action sought specific performance of a contract identified as a written settlement agreement. The second cause of action consisted of a verified petition for peremptory writ of mandate seeking the same relief against the Department. Additional causes of action sought declaratory relief and mandate against LACERA.

---

[1] Except as otherwise indicated, all references to the Department include both the Sheriff's Department of Los Angeles County and Sheriff Leroy Baca individually.

[2] LACERA is a public retirement system independent from the County of Los Angeles, with powers and obligations under the County Employees Retirement Law of 1937, Government Code section 31450 et seq. (CERL), for administration of the retirement system for specified employees of the County of Los Angeles. (*Traub v. Board of Retirement of the Los Angeles County Employees Retirement Association* (1983) 34 Cal.3d 793, 798-799; *Board of Retirement v. Superior Court* (2002) 101 Cal.App.4th 1062, 1065 & fn. 1.)

**Factual Allegations**[3]

As a factual basis for her suit, Hudson alleged that she became a Los Angeles County Deputy Sheriff, and member of LACERA, on November 1, 1998. In December 2000 and March 2001, she sustained on-duty service-related injuries to her left and right knees, respectively, for which she received benefits under Labor Code section 4850.[4] In August 2003, while she was on disability leave from the Department, Hudson's right knee was further injured during an off-duty incident in which four sheriff's deputies forceably ejected her from a home in which she was living with her boyfriend, another sheriff's deputy, after he falsely reported to on-duty deputy sheriffs that she had refused his request to leave his home.

In September, 2004, the Department filed an application to LACERA for a disability retirement on Hudson's behalf, based on her work-related left knee injury. In October 2004, Hudson filed her own disability-retirement application, claiming on-duty injuries to both knees.

In January 2005, the Department fired Hudson for misconduct, allegedly due to her physical resistance and use of profane language after being pepper-sprayed during the August 2003 off-duty incident.[5] On February 1, 2005, Hudson appealed her discharge to

---

[3] Except as otherwise noted, we state the facts as alleged by Hudson, consistent with the presumptions that govern our review of the trial court's rulings at the pleading stage of the proceedings.

[4] Labor Code section 4850 provides for leaves of absence of up to a year without loss of salary for Los Angeles County deputy sheriffs and certain other county employees who suffer injuries in the course of their duties, in lieu of temporary disability or maintenance allowance payments.

[5] According to Hudson's pleading, the incident occurred in August 2003, when her live-in boyfriend, also a deputy sheriff, summoned the sheriff's department to remove Hudson from his bed and from his home, telling four on-duty deputy sheriffs (including a sergeant under whom the plaintiff had worked) that she did not live there and that she had refused his requests that she leave. Based on that false information, the deputies ordered plaintiff, who was then in bed and dressed only in her underwear, to leave the residence, and when she attempted to go into the bathroom to get dressed, the deputies forced entry,

3

the Los Angeles Civil Service Commission (the Civil Service Commission), which scheduled hearings in September 2005.

On May 4, 2005, before the Civil Service Commission hearings on the matter, LACERA issued its determination that Hudson's right knee injury permanently disabled her from performing her duties as a deputy sheriff, but that the injury was not service-connected because it had been exacerbated during the off-duty incident. LACERA informed her that for that reason she would not be entitled to service-connected disability benefits, and that because she was credited with less than five years of service with the Department she was would be entitled to no disability allowance.

LACERA informed Hudson that because she would receive no retirement benefits, she had the option to withdraw her accumulated retirement contributions. In December 2006, because she was in economic need Hudson withdrew all of the retirement funds she had contributed to LACERA during her almost five years of employment as a deputy sheriff.

On February 6, 2008, the Civil Service Commission issued its final decision on Hudson's appeal from her discharge. The decision adopted its hearing officer's findings that the termination of her employment had been unjustified, and required the Department to restore Hudson's employment as a deputy sheriff, retroactive to five days after her discharge.[6] The Department did not appeal the Civil Service Commission's decision, which became final on May 16, 2008.

The Department did not comply with the Civil Service Commission order. In March 2008 it mailed to Hudson a "Notice of Medical Release" informing her that she

---

pepper-sprayed her in the face while her arms were held, hog-tied her, and injured her right knee while carrying her from the residence.

[6] The Civil Service Commission adopted its hearing officer's findings that the incident was caused by false accusations by Hudson's boyfriend that she did not live there and that she had been asked to leave, and by the responding deputies' poor judgment and failure to follow department protocol—although Hudson admittedly accused a participating deputy of being a "pussy," while being removed from the bathroom in her underwear after being pepper-sprayed.

4

was released from her position as a deputy sheriff, effective retroactively as of May 4, 2005, as a result of her right knee injury. On April 5, 2008, Hudson filed a new appeal to the Civil Service Commission, alleging that the Department's "medical release" was done in retaliation for her successful challenge to her wrongful discharge by the Department.

On August 5, 2008, while her appeal from her medical release was pending, Hudson entered into an unwritten agreement with the Department, under which she would be permitted to return to work in an unsworn position with the Department until LACERA could reexamine her medical eligibility to return to her position as a deputy sheriff. Under the agreement, if LACERA were to determine that she remained disabled from performing as a deputy sheriff, the Department would reinstate her to employment as a civilian custody assistant; if LACERA found her to be medically capable of performing as a deputy sheriff, she would be immediately reinstated to that position. The unwritten agreement was confirmed in an August 8, 2008 letter from the Department's attorney.

An October 8, 2008 note from Hudson's treating physician released her for full-time work as a deputy sheriff, recommending that she work at the Department's court services division. In early November 2008, an Agreed Medical Examiner (appointed in connection with her workers' compensation claim) released her for full-time work as a deputy sheriff.

On December 22, 2008, Hudson entered into a written settlement agreement with the Department, providing that she would return to work on a specified date in a 120-day custody-assistant assignment; that she would undergo a medical reevaluation and obtain a new disability determination from LACERA; that she would be restored as a deputy sheriff if LACERA determined that she was no longer disabled, and she would be hired as a permanent custody assistant if LACERA determined that she remained disabled to

serve as a deputy sheriff.[7]  Beginning in January 2009, Hudson went to work as a custody assistant pursuant to the written agreement.

LACERA refused to reevaluate Hudson's eligibility for employment as a deputy sheriff, however, on the ground that her December 2006 withdrawal of her retirement contributions had ended her LACERA membership.

At the end of April 2009, Hudson provided LACERA with a medical release from the surgeon who had performed surgery on her right knee, releasing her for duty as a deputy sheriff as of May 4, 2009.  Hudson repeated her request for a medical reevaluation by LACERA.  LACERA continued to refuse to reevaluate Hudson's medical disability status on the ground that she was no longer a LACERA member due to her 2006 withdrawal of retirement contributions.

On June 9, 2009, counsel for the Department and for LACERA orally agreed with Hudson's counsel that LACERA and the Department would accept and comply with any recommendation made by the doctor who had determined Hudson's permanent disability for LACERA in 2005.  On June 30, 2009, Hudson's 120-day assignment as a custody assistant expired, leaving her without employment.

After reexamining Hudson on July 15, 2009, the doctor to whom the parties had agreed reported that Hudson appeared to be fit for unrestricted duty as a deputy sheriff. On August 25, 2009, Hudson provided the Department with the report, and requested immediate reinstatement as a deputy sheriff.

On September 11, 2009, the Department informed Hudson that it would not reinstate her to any position with the Department, and continued that refusal during the following months.

---

[7] The written settlement agreement is designated exhibit A to the complaint, but was not attached (apparently inadvertently) when the complaint was filed.  Hudson corrected the omission a few days later, filing a Notice of Errata attaching the complaint's exhibit A.  The Department also filed a copy of the exhibit when it moved for judgment on the pleadings. (The complaint and some other documents erroneously identify the settlement agreement's execution date as December 22, 2009, rather than December 22, 2008.)

6

**First Cause of Action**

The first cause of action of Hudson's original complaint alleged the Department's breach of the December 2008 settlement agreement, seeking specific performance requiring the Department to reinstate Hudson as a deputy sheriff with backpay and benefits.

**Second Cause of Action**

The second cause of action petitioned for a peremptory writ of traditional mandate under Code of Civil Procedure section 1085, requiring the Department to perform the ministerial duty created by the Civil Service Commission's February 2008 order (as well as the December 2008 settlement agreement), requiring Hudson to reinstatement to employment as a deputy sheriff with backpay and benefits.

**Third Cause of Action**

The complaint's third cause of action sought a declaration of the parties rights and responsibilities under the settlement agreement and the Civil Service Commission's order.

**Fourth Cause of Action**

The complaint's fourth cause of action alleged that LACERA breached its ministerial duty to fully inform Hudson of the consequences of withdrawing her accumulated retirement contributions, and a ministerial duty to allow her to re-contribute the withdrawn contributions, then to be reevaluated by LACERA to determine her present medical eligibility to serve as a deputy sheriff.

**Fifth Cause of Action**

The fifth cause of action sought a declaration that Hudson is permitted to repay the retirement contributions she had withdrawn from LACERA, and then to be treated the same as any LACERA member with respect to reevaluation of her disability status.

**Answers to Complaint**

The Department filed its answer to the original complaint and return to the petition on or about May 2, 2011, admitting and denying various allegations and asserting 77

7

affirmative defenses. LACERA filed its answer to the complaint on May 23, 2011. Hudson filed a replication on June 8, 2011.

**Department's Motion for Judgment on the Pleadings**

The Department moved for judgment on the pleadings with respect to Hudson's first three causes of action, for failure to state a claim. The motion argued that Hudson failed to meet the conditions precedent to enforcement of the settlement agreement's terms, that she is entitled to no possible remedy under any theory, and that she failed to file a claim under the Government Claims Act (Gov. Code, §§ 910, 911.2).[8]

Specifically, the Department's motion contended section 31725 requires that Hudson's capacity to perform as a deputy sheriff must be determined by LACERA, not by the Civil Service Commission; that LACERA still deems Hudson to be disabled notwithstanding the Civil Service Commission order setting aside her discharge; that the settlement agreement's condition to her reinstatement has not occurred because Hudson has not obtained LACERA's redetermination of her disability status; and that in any event Hudson's alleged oral agreement with LACERA's counsel concerning her right to reinstatement does not bind LACERA's Board to adopt the designated doctor's recommendation. The Department argued also that the complaint improperly sought specific performance of a personal-services contract, in violation of Civil Code section 3390.

Hudson's opposition argued that no government claim was required because her action was not a wage claim by a former employee; that her settlement agreement was not a personal-services contract; that the agreement of LACERA's counsel regarding the procedure for reevaluating Hudson's disability status was valid and enforceable; and that her complaint stated a claim for traditional mandate to enforce the Department's ministerial duty to comply with the unappealed order of the Civil Service Commission.

---

[8] Unless otherwise specified, all further statutory references are to the Government Code.

8

**Ruling on Motion for Judgment on the Pleadings**

On March 13, 2012, the trial court (Amy Hogue, Judge) granted the Department's motion for judgment on the pleadings on the first cause of action (for specific performance), with 10 days leave to amend; granted the Department's motion for judgment on the pleadings on the third cause of action (for declaratory relief) without leave to amend; and declined to rule as to the second cause of action (petition for writ of mandate), ruling that the motion with respect to it should be brought in the court's writs and receivers department.

**The First Amended Complaint**

On March 27, 2012, Hudson filed an amended pleading alleging essentially the same underlying facts with some additional factual elements. But it did not re-allege the original first cause of action for specific performance of the written settlement agreement, or the original third cause of action for declaratory relief, as to which the court had granted judgment on the pleadings.

The new first and second causes of action of the amended pleading allege the Department's violations of Hudson's civil rights under the due process clause of the Fourteenth Amendment to the United States Constitution, primarily by failing to comply with the Civil Service Commission order requiring restoration of her employment and with its oral and written agreements to do so. They seek her reinstatement as a deputy sheriff, backpay, interest, actual and exemplary damages, mandate, declaratory relief, and attorney fees.[9] The third cause of action of the amended pleading re-alleges the original complaint's petition for a writ of mandate against the Department under Code of Civil Procedure section 1085. It alleges (in addition to Hudson's beneficial interests and lack of adequate remedy at law) that the Department has ministerial duties to comply with the Civil Service Commission order and the written settlement agreement requiring Hudson's restoration to her employment as a deputy sheriff with backpay and benefits.

---

[9] The December 22, 2008 settlement agreement is not made an exhibit to the amended pleading, although it is frequently mentioned. The trial court took judicial notice of the original complaint and the written settlement agreement.

9

The fourth cause of action of the amended complaint petitions for a writ of mandate against LACERA, under Code of Civil Procedure section 1085. It alleges LACERA's fiduciary duty to advise Hudson of the consequences of her withdrawal of her accumulated retirement contributions, its failure to advise her of those consequences, and its resulting duty to allow redeposit of the withdrawn contributions in order to restore her membership in LACERA and to enable LACERA to reevaluate her disability status for her return to service as a deputy sheriff.

The amended complaint's fifth cause of action seeks a declaration of LACERA's obligation to permit Hudson to redeposit her withdrawn retirement contributions and LACERA's obligation to then reevaluate her medical fitness for service as a deputy sheriff.

**The Department's Motion to Strike the First and Second Causes of Action of the First Amended Complaint**

The Department demurred and moved to strike the amended pleading's first and second causes of action (or in the alternative, to strike exemplary damage allegations of the first and second causes of action). Its motion argued that the first and second causes of action should be stricken on three grounds: (1) that they improperly seek punitive damages; (2) that they transform the case from a specific performance case into a federal constitutional case; and (3) that the new causes of action violate the trial court's grant of leave to amend the original pleading.

**The Order Striking the First and Second Causes of Action of the First Amended Complaint**

On May 29, 2012, the trial court (Amy Hogue, Judge) granted the Department's motion to strike the amended pleading's first and second causes of action. The hearing's wide-ranging May 11, 2012 oral argument touched on numerous potential issues, many of which were not addressed by the Department's moving papers (including statutes of limitations, tort claims act filing requirements, civil rights act pleading requirements, and many questions regarding disputed documents and issues of fact). But the court apparently ruled that its leave to amend the original complaint's first cause of action was

10

limited to an amendment to cure the first cause of action's failure to plead a tort claims act filing (a ground not raised by the Department's motion), but not to seek new remedies under federal law. The court articulated its reasoning: "Yes, what I allowed was leave to amend to plead, if she could, compliance with a tort claims act, which I suspect[ed] that she couldn't do." "I didn't give you leave to file a 1983 cause of action, that's the problem. I only gave you leave to cure the contract claim."[10]

The court reassigned the amended complaint's remaining claims—the third cause of action for mandate against the Department, the fourth cause of action for mandate against LACERA, and the fifth cause of action for declaratory relief against LACERA— to the court's writs and receivers department. A declaration of Hudson's counsel avers that on June 8, 2012, the case was reassigned to department 82 (Luis Lavin, Judge).

**The Department's Motion for Judgment on the Pleadings on the Petition for Writ of Mandate to Enforce the Civil Service Commission Order and Settlement Agreement**

On or about October 11, 2012, the Department moved in department 82 for judgment on the pleadings on the amended pleading's third cause of action for writ of mandate, on the ground that the pleading failed to state facts sufficient to establish the Department's ministerial duty to reemploy Hudson.

**The Order Granting the Department's Motion for Judgment on the Pleadings**

On December 18, 2012, the court in department 82 (Luis Lavin, Judge) granted the Department's judgment on the pleadings against Hudson's petition for writ of mandate, without leave to amend.[11] Its written order explained that Hudson failed to sufficiently

---

[10] The Department later explained in its motion for judgment on the pleadings in department 82, that "[o]n May 29, 2012, the trial court granted the Defendant County's Motion to Strike the First Amended Complaint on the basis that the amendment was not authorized by the Court."

[11] The court granted the Department's request for judicial notice of Hudson's original complaint, with Hudson's errata notice and the attached settlement agreement; Judge Hogue's May 29, 2012 ruling on the Department's motions; and Hudson's January 5, 2012 declaration in support of a motion for summary judgment against the Department

11

allege a ministerial duty on the Department's part to comply with either the Civil Service Commission's order or the parties' settlement agreement. The Civil Service Commission's order could not be enforced because it had been extinguished and superseded by the settlement agreement; and the settlement agreement could not be enforced because it required LACERA to reevaluate Hudson's physical eligibility, which LACARA could not do because Hudson was no longer a Department employee and LACERA member.

### Denial of Hudson's Motion for Reconsideration of Order Granting Department's Motion for Judgment on the Pleadings

Hudson sought reconsideration of the ruling that the settlement agreement had extinguished or superseded the December 22, 2008 Civil Service Commission order. She argued that she had been unable to address that issue because the Department's motion had not raised it. On the merits she argued that the settlement agreement settled only Civil Service Commission case No. 08-146, challenging the Department's medical release of Hudson after she was ordered reinstatement as a deputy sheriff; that the settlement agreement does not affect the Civil Service Commission's order in case No. 05-038; and that the agreement therefore could not have extinguished or superseded the Civil Service Commission's order in that case, which was unappealed and final when the settlement agreement was entered into. She sought, at a minimum, leave to amend to more clearly plead the Department's mandatory duty to restore her employment as a deputy sheriff.[12]

---

(earlier taken off calendar by the court). The court also granted judicial notice of documents filed before the matter was transferred to the writs and receivers department. It denied LACERA's request for judicial notice of Hudson's application for withdrawal of her accumulated retirement contributions. The parties do not challenge these rulings.

[12] The record contains no ruling on Hudson's request for judicial notice accompanying her reconsideration motion, including for: Hudson's request for Civil Service Commission appeal from her discharge in case No. 05-038; the hearing officer's report in case No. 05-038 recommending her reinstatement; the Department's objections to the hearing officer's report in case No. 05-038; the Commission's February 6, 2008

12

The court denied the motion for reconsideration on February 22, 2013 (after having entered judgment in the Department's favor). Its written order explained that even if reconsideration were otherwise appropriate, the Department had no ministerial duty to restore Hudson's employment because the Civil Service Commission order is superseded by the settlement agreement, and because Hudson failed to comply with the settlement agreement by failing to obtain LACERA's reevaluation of her disability status. The court added that the mandate claim would also be barred by the applicable statute of limitations.

**LACERA's Motion for Judgment on the Pleadings on the Petition for Writ of Mandate to Permit Redeposit of Hudson's Withdrawn Retirement Contributions**

On November 6, 2012, LACERA filed points and authorities in support of a motion for judgment on the pleadings on the fourth and fifth causes of action of the amended complaint. It argued that Hudson could not establish LACERA's violation of a ministerial duty, because her pleadings and judicially noticed documents show that LACERA fulfilled its duty by advising Hudson that withdrawing her retirement contributions would forfeit her rights to future retirement benefits; that her declaratory relief claim duplicated the claim for writ of mandate; and that under section 31652 Hudson must be employed by the county to be eligible to redeposit her withdrawn contributions.

**Rulings on LACERA's Motion For Judgment on the Pleadings**

The court in department 82 (Luis Lavin, Judge) heard argument on December 6, 2012.[13] On December 18, 2012, it denied judgment on the pleadings on petition for writ

final decision in case No. 05-038, ordering Hudson's restoration to employment; Hudson's request for Civil Service Commission appeal from her medical release by the Department in case No. 08-146; and various documents and filings leading up to the March 16, 2009 withdrawal of her appeal in case No. 08-146.

[13] LACERA's counsel acknowledged that no notice of motion had been filed, which the trial court tentatively identified as a "fatal" defect in the motion.

13

of mandate, ruling that the pleading's allegations of LACERA's ministerial duty and its failure to advise Hudson was sufficient to support the claimed remedies, allowing her to redeposit her withdrawn retirement contributions and to obtain LACERA's reevaluation of her disability status. The court granted judgment on the pleadings as to the declaratory relief cause of action without leave to amend.[14]

### Denial of Hudson's Petition for Writ of Mandate Against LACERA

On February 28, 2013, the court (Luis Lavin, Judge) denied Hudson's petition for writ of mandate against LACERA, ruling on the merits that Hudson had no agreement requiring LACERA to permit her to redeposit her withdrawn retirement contributions or to revaluate her disability status, and that she had misrepresented a number of facts in her pleadings and briefs.

### Entry of Judgment and Notices of Appeal

On January 14, 2013, the court (Luis Lavin, Judge) entered judgment in favor of the Department and against Hudson. On March 15, 2013 (58 days later), Hudson filed her timely notice of appeal from that judgment.

On March 26, 2013, the court entered judgment in favor of LACERA and against Hudson. On May 24, 2013 (59 days later), Hudson filed her timely notice of appeal from that judgment.

On appeal Hudson challenges the trial court's rulings: (1) construing the settlement agreement as an unenforceable contract for personal services; (2) failing to allow Hudson's amendment to add a civil rights cause of action; (3) granting judgment on

---

[14] The court granted the Department's request for judicial notice of Hudson's original complaint, with Hudson's errata notice and the attached settlement agreement; Judge Hogue's May 29, 2012 ruling on the Department's demurrer, motion to strike, and motion for judgment on the pleadings; and Hudson's January 5, 2012 Declaration filed in support of her motion for summary judgment against the Department (which the court had earlier taken off calendar). The court also granted judicial notice of documents filed in the court's trial department before the matter was transferred to the writs and receivers department. It denied LACERA's request for judicial notice of LACERA's letter advising Hudson she is entitled to no future retirement benefits and Hudson's application for withdrawal of her accumulated retirement contributions. The parties do not challenge these rulings.

the pleadings and dismissal of the claim for mandate against the Department; (4) denying reconsideration of that ruling, and adding new grounds for its underlying ruling; and (5) denying mandate against LACERA.[15]

**Discussion**

**I.      Summary of Decision**

Hudson is caught in a tangled web not wholly of her own weaving.  The Department was ordered to restore her to the employment from which she was wrongfully discharged; but it has refused to comply with that unconditional order because she has since been retired on grounds of disability.  Her employment cannot be restored unless LACERA determines she is no longer disabled, which it will not do unless she is a LACERA member; but her LACERA membership ended when she withdrew her retirement contributions after being told she is ineligible for retirement benefits.

Hudson contends on appeal that the trial court erred in five major respects:  (1) by ruling that her settlement agreement with the Department is unenforceable as a matter of law; (2) by striking her civil rights causes of action from her amended complaint; (3) by dismissing her mandate cause of action against the Department; (4) by refusing to reconsider its dismissal of her claim against LACERA (while adding to the grounds for its ruling on that motion); and (5) by denying mandate against LACERA.

We conclude that on the pleaded facts, the Civil Service Commission order requires the Department to restore Hudson to employment, whether she is or is not disabled to serve as a deputy sheriff.  Upon restoration of her employment she will be restored to LACERA membership, and will be eligible for LACERA's evaluation and determination of her disability status (whether she is or is not a LACERA member before that time).  And unless LACERA advised her that forfeiture of any right to restoration of her employment and redetermination of her disability would be a consequence of

---

[15] On April 15, 2014, this court granted Hudson's motion to augment the record on appeal to include two declarations and attached exhibits that had been before the trial court, but denied her request for judicial notice of excerpts of her deposition, which had not been before the trial court.

15

withdrawing her accumulated retirement contributions from LACERA, LACERA breached its fiduciary duties to Hudson and may be obligated to permit her to redeposit her withdrawn contributions (on the same basis it permits other retired employees to do so), and to reevaluate her current disability status on the same basis it does for other Department employees.

The orders striking and granting judgment without trial on various of Hudson's claims against the Department must be reversed, permitting superior court reexamination of those claims' procedural and substantive viability; and the judgment denying a writ of mandate against LACERA on the merits is unsupported by evidence and must be reversed.

## II.    The Trial Court Erred in Granting Judgment on the Pleadings and Dismissing the Petition for Mandate to Restore Hudson's Employment

The Department's motion raised three overlapping grounds for judgment on the pleadings on Hudson's petition for a writ seeking mandate to enforce the Civil Service Commission's reinstatement order and the agreements for implementation of that order: (1) Hudson failed to allege an enforceable duty to reinstate her to Department employment; (2) the Department cannot reinstate Hudson without LACERA's revision of its permanent disability determination; and (3) the Department has no ministerial duty because only LACERA can revise Hudson's disability determination.

The trial court granted judgment on the pleadings, without leave to amend. It identified two grounds for its ruling: (1) the parties' written settlement agreement does not support a ministerial duty for the Department to reinstate Hudson's employment, because it contemplates that LACERA will reevaluate Hudson's disability status, which LACERA has declined to do; and (2) the Civil Service Commission order does not support a ministerial duty to reinstate Hudson's employment, because the order was superseded by the parties' (unenforceable) settlement agreement.

The trial court's order denying Hudson's motion for reconsideration of the ruling that the Civil Service Commission order was superseded added another ground:  that

16

even if reconsideration were otherwise appropriate, the petition for mandate against the Department would necessarily be barred by the statute of limitations.

We conclude that the court erred in granting the Department judgment on the pleadings without leave to amend, and that (whether reconsideration would or would not have been appropriate) the petition for mandate is not as a matter of law time-barred.

### A. Standards of Review

A defense motion for judgment on the pleadings "is akin to a demurrer and is properly granted only if the complaint does not state facts sufficient to state a cause of action against that defendant." (*Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1254; *Kabehie v. Zoland* (2002) 102 Cal.App.4th 513, 519; see Code Civ. Proc., § 438, subd. (c)(1) [motion for judgment on pleadings for failure to state cause of action].) We treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We independently construe statutes as a matter of law according to their purpose and intent. (*Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1465.) The motion for judgment must be denied if the pleading states a cause of action on any theory. (*Quelimane Co. v. Stewart Title Guaranty Company* (1998) 19 Cal.4th 26, 38.) If the motion for judgment on the pleadings is granted, leave to amend must be granted unless the defect cannot be cured by amendment. (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.) If as a matter of law there is no possible liability, denial of leave to amend is proper. (*Schonfeldt v. State of California*, *supra*, 61 Cal.App.4th at p. 1465.)

Where the trial court has ruled upon disputed facts, we defer to the trial court's factual determinations if supported by substantial evidence. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) However, legal interpretations that do not turn on disputed facts are subject to de novo review. (*Ibid*.; *Morgan v. City of Los Angeles Bd. of Pension Comrs.* (2000) 85 Cal.App.4th 836, 843.) An abuse of discretion standard applies to a court's denial of a motion for reconsideration. (*Farmers Insurance Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106-107.)

17

**B. Right to Mandate**

A writ of mandate may be issued by any court "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (Code Civ. Proc., § 1085, subd. (a).) The showing required to be entitled to mandate is that the public agency has a clear, present and ministerial duty to afford the relief sought, and that the petitioner has a clear, present and beneficial right to performance of that duty. (*Kavanaugh v. West Sonoma County Union High School Dist.*, *supra*, 29 Cal.4th at p. 916; *Bullis Charter School v. Los Altos School Dist.* (2011) 200 Cal.App.4th 1022, 1035.) An act is "ministerial" when a public officer is required to perform it in a prescribed manner when a given state of facts exists, in obedience to the mandate of legal authority and without regard to his, her, or its own opinion concerning the act's propriety. (*Kavanaugh v. West Sonoma County Union High School Dist.*, *supra*, 29 Cal.4th at p. 916.) The writ rests in the discretion of the issuing court, but becomes a matter of right when the plaintiff shows that "there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086; *May v. Board of Directors* (1949) 34 Cal.2d 125, 133-134; *City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 925.)

**C. The Pleading Alleges the Department's Mandatory Duty to Reinstate Hudson to Employment**

Under Rule 1 of the Los Angeles County Civil Service Rules, adopted by the Los Angeles County Board of Supervisors, the Civil Service Commission rules have the force and effect of law. (Ord. No. 88-0020, § 1 (part), 1988, Title 5 Los Angeles County Code of Ordinances, Personnel, App. 1 Civ. Serv. Rules.) Rule 18.04(B) of the Civil Service Commission rules provides that when the Civil Service Commission notifies an employing authority that its discharge of a county employee is not justified, the notification "shall be a bar to any discharge or reduction for the specific reasons which have been presented, and the discharged or reduced employee shall be reinstated retroactively to his/her position as of a date set by the commission. . . ." (Ord. No. 88-

18

0020, § 1 (part), 1988, Title 5 Los Angeles County Code of Ordinances, Personnel, App. 1 Civ. Serv. Rules.)

Hudson's pleadings allege that on or about February 2008, the Civil Service Commission notified the Department—the employing authority—that its discharge of Hudson was not justified by the reasons presented, and ordered her employment restored. The Commission's order adopted the hearing officer's findings and conclusions, ordering that Hudson's discharge be set aside except for a (long-since lapsed) five-day suspension, and that Hudson be made whole as provided under County Code section 6.20.100, which provides that a wrongly discharged employee is entitled to backpay, vacation and sick leave "as if such unsustained . . . discharge had not been invoked."[16] These allegations sufficiently allege a mandatory legal duty on the Department's part to restore Hudson to employment as of the date set by the Civil Service Commission.

### 1. The pleaded settlement agreements do not necessarily supersede and extinguish the Department's duties under the Civil Service Commission order.

The trial court held that the Civil Service Commission order requiring restoration of Hudson's employment is necessarily unenforceable against the Department, because the order "was superseded by the subsequent settlement agreement" alleged in the amended pleading.[17] However, whether such an interpretation of the pleaded agreements is or is not reasonable, it is not the agreements' only possible reasonable interpretation, either on the facts alleged in the pleading or on the facts that could be alleged. Accordingly, the court erred in granting judgment on the pleadings without leave to amend.

---

[16] The Civil Service Commission order expressly rejected the Department's claim that Hudson's disability retirement precluded her reinstatement to Department employment.

[17] Hudson argued that even if the agreement were unenforceable, its unenforceability would not preclude enforcement of the Civil Service Commission order, which is not affected by the alleged settlement agreement.

19

We review the record de novo to determine whether the pleading states a cause of action and, if it does not, whether the defect might reasonably be cured by amendment. If it can be cured, the trial court's ruling must be reversed. (*Shea Homes Limited Partnership v. County of Alameda*, *supra*, 110 Cal.App.4th at p. 1254; *Baughman v. State of California*, *supra*, 38 Cal.App.4th at p. 187.)

The pleaded settlement agreements do not necessarily extinguish or supersede the Civil Service Commission order, and do not necessarily render it unenforceable. Nothing in the written settlement agreement or the pleaded oral agreements indicates an express intention to negate or supersede the order in Civil Service Commission case No. 05-038 (restoring Hudson's employment), nor an intention to waive Hudson's right to the benefits of that order. The written settlement agreement is captioned as a document in Civil Service Commission case No. 08-146 (not in case No. 05-038). It provides that Hudson would accept a temporary assignment with the Department; that she would as soon as possible "take all necessary steps to obtain a reevaluation and new determination of disability from LACERA;" and that if LACERA determines that Hudson is no longer disabled, the Department would restore her "to her previously held position of Deputy Sheriff pursuant to Civil Service," but if LACERA determines that she remains disabled from performing the duties of a deputy sheriff, she would be employed by the Department as a custody assistant (a position for which the Department admitted she was qualified). The agreement provides for dismissal of case No. 08-146 (the appeal challenging the Department's medical release of Hudson after her reinstatement was ordered), and for broad releases of liability for claims arising from the employment relationship "concerning the subject matter referred herein" (arguably, case No. 08-146) and "claims regarding discrimination, harassment or retaliation in any form."

The alleged agreements thus might be interpreted as an attempt by the parties to resolve the uncertainties and disputes about the nature of the employment to which the Hudson was entitled to be restored by the unchallenged Civil Service Commission order, in light of her disability status at that time. It might be interpreted as an agreed-upon procedure under which LACERA's reevaluation of her current disability status would be

20

permissible, and on the employment to which she would be restored depending on that reevaluation. Under interpretations such as these, LACERA's duties to perform contemplated acts arise not from the agreement, but from the law and LACERA's own rules.

The pleaded settlement agreements therefore are susceptible to interpretations that do not render the Civil Service Commission order in case No. 05-038 superseded, or extinguished. It is improper for a trial court to interpret a document of which it has taken judicial notice as a matter of law, when there has been no opportunity to present evidence with respect to its intended meaning. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114-115.)[18] The trial court was not justified in concluding that the alleged agreement or agreements necessarily rendered the order unenforceable against the Department.

In reaching this conclusion we do not hold that the alleged settlement agreements are necessarily enforceable, nor that the meanings suggested here are the only appropriate interpretations. The allegations and the claims they support have not been considered on their merits; we express no opinion on their appropriate meanings, or the parties' rights and duties under them. We hold only that the allegations are susceptible to interpretations that would not necessarily preclude enforcement of the Civil Service Commission order restoring Hudson to Department employment. For that reason, the trial court erred in granting judgment on the pleadings on the amended pleading's third cause of action for mandate against the Department.

---

[18] The pleaded facts and representations of counsel also suggest the possibility of amendments to allege that the Department knew—and was aware that Hudson did not know—when it entered into the written settlement agreement that LACERA could not or would not reevaluate Hudson's disability status, which allegations might justify additional remedies.

21

**2.    LACERA's grant of a disability retirement to Hudson did not divest the Civil Service Commission of authority to review Hudson's unjustified discharge and to order her employment restored.**

The Department contends on appeal that the Civil Service Commission's authority to review the propriety of Hudson's discharge ended when LACERA granted Hudson a disability retirement on May 4, 2005. If the Department is correct, that event rendered the Commission's later reinstatement order void, precluding relief for Hudson without regard to the merits of the Commission's (or the trial court's) rulings.[19]

The Department's contention rests on two cases: *Zuniga*, *supra*, 137 Cal.App.4th 1255, decided by Division Four of this Court, and *County of Los Angeles Dept. of Health Services v. Civil Service Com. of County of Los Angeles (Latham)* (2009) 180 Cal.App.4th 391 (*Latham*), decided by Division Eight of this Court. In *Zuniga*, a deputy sheriff was suspended after he was charged with criminal offenses, under a civil service rule allowing an employee's temporary suspension until the charges are finally resolved. (*Id.* at p. 1257.) But before the employee's challenge to his suspension was ruled on by the Civil Service Commission, he voluntarily resigned from the Department. The Court of Appeal held that Zuniga's voluntary retirement unequivocally demonstrated his intention and determination not to seek restoration of his employment as a deputy sheriff. Because the Civil Service Commission's authority is limited to reviewing a right to restoration of employment and it could adjudicate his right to backpay only in connection with restoration to employment, the court concluded that the Commission lacked authority to determine whether Zuniga's suspension was justified. (*Id.* at p. 1260.)

In *Latham*, *supra*, 180 Cal.App.4th 391, a nurse sought Civil Service Commission review of the Los Angeles Department of Health Services' decisions suspending her employment for 30 days, then discharging her. Before the Commission ruled, however,

---

[19] Whether the Department did or did not raise its jurisdictional challenge in the trial court, "an appellate court may consider lack of jurisdiction even if not raised in the trial court, as it constitutes a pure question of law." (*Zuniga v. Los Angeles County Civil Service Com.* (2006) 137 Cal.App.4th 1255, 1260 (*Zuniga*).)

22

she voluntarily retired. The trial court overturned the Commission's refusal to dismiss her appeal for lack of jurisdiction[20] (*id.* at p. 395), and the Court of Appeal—quoting the *Zuniga* decision's analysis almost in its entirety—held that an employee's retirement during a civil service proceeding divests the commission of jurisdiction: "*Zuniga* stands for the bright-line proposition that, where an employee retires during the pendency of a civil service appeal, her future status as an employee by definition is no longer at issue." (*Id.* at p. 401.) "In short, the Commission has authority to address only matters involving a member of the civil service, and a person who has retired is no longer a member of the civil service." (*Ibid.*)

The decisions in *Zuniga* and *Latham*, *supra*, rest on the principal that the Commission """"has only the special and limited jurisdiction expressly authorized by the [county] charter"""""; that it has authority to hear appeals of discharged permanent employees (Los Angeles Co. Charter, § 35(6)); but it can hear appeals of *former* employees in only specified limited circumstances. (Civ. Serv. Rule 4.01; *Zuniga*, *supra*, at p. 401.) Holding that there is no distinction between a retirement and a resignation, *Zuniga* concluded that "the activating event is separation from service, whether by retirement, resignation, death, or discharge. . . . Once a person has separated from service, the Commission has no further jurisdiction [except as specified by governing constitutional charter or statutory provisions]." (*Zuniga*, *supra*, 137 Cal.App.4th at p. 1260.)

We are unable to apply the "bright-line" rule enunciated in *Zuniga* and *Latham*, *supra*, to hold that the Civil Service Commission lacked authority to review Hudson's discharge under the circumstances of this case. As the *Zuniga* and *Latham* decisions held, a former employee who has expressed an unequivocal intention to end his or her employment is no longer entitled to Civil Service Commission review of the propriety of an earlier suspension or discharge. But the logic of those decisions does not render the discharge of an employee immune from Civil Service Commission review, merely

---

[20] The Civil Service Commission had found that Latham's suspension was appropriate, but her discharge was not. (*Latham*, *supra*, at p. 395.)

23

because at the time she was discharged she was disabled (even "permanently") and her retirement rights had not yet fully vested.

It is true that Hudson did not "maintain [her] employment throughout the administrative process" (*Zuniga*, *supra*, 137 Cal.App.4th at p. 1261; *Latham*, *supra*, 180 Cal.App.4th at p. 400); but her failure to do so was not necessarily an unequivocal expression of an intention to forever abandon her Department employment, as the employees' resignations were in *Zuniga* and *Latham*. Here, the Civil Service Commission expressly found that it was the Department, not Hudson, who had initiated her disability retirement, and her retirement for disability was statutorily mandated without regard to her intentions. (§ 31725.)

Moreover, changes in disability status are not uncommon following medical treatment and with the passage of time. For that reason the law specifically authorizes— and actually requires—that LACERA reevaluate the disability status of retirement beneficiaries, and that it reinstate them to employment when disabilities that were formerly incapacitating no longer justify a disability retirement. (§§ 31729, 31730, 31733; *Schrier v. San Mateo County Employees' Ret. Ass'n* (1983) 142 Cal.App.3d 957, 959, 961 [§§ 31729 & 31730 apply to disability retiree whose physical condition has improved to the point he is fit for duty].)

Under these circumstances Hudson's disability retirement cannot be deemed to have established her intention to forever sever her employment status with the Department (the ground on which the broad rule stated in the *Zuniga* and *Latham*, *supra*, decisions rest) or to forfeit her pending Civil Service Commission appeal. This conclusion is supported by the decision in *Lucas v. State of California* (1997) 58 Cal.App.4th 744, 750-751, a case involving facts closely analogous to those alleged in this case. There, the plaintiff had been wrongfully charged with misconduct and discharged from his state employment. As in the case at hand, he had obtained a voluntary retirement while his appeal from his discharge was pending. Then, after he had received his retirement but before the hearing on his discharge, the state withdrew its adverse employment action against him. The state then argued that because he was no

24

longer a state employee by virtue of his retirement, he was not entitled either to reinstatement of his employment, or to a hearing to clear his name. (*Id.* at pp. 748-749.) But the court held that these circumstances require a distinction between separation from a civil service position by resignation and by retirement, concluding that the plaintiff was not prevented by his voluntary retirement from pleading a viable claim for writ of mandate compelling the state to reinstate him to his former employment. (*Id.* at pp. 750-751.) Such a distinction would seem to be all the more compelled when the service retirement is for a disability that, while identified as "permanent," is of a sort that may turn out to be correctable.

These factors indicate that Hudson's disability retirement cannot be deemed to have waived and forfeited her challenge to her wrongful discharge, or to have necessarily severed her employment status in the event she were to prevail before the Civil Service Commission. Although the *Zuniga* and *Latham*, *supra*, decisions hold that a former employee who has expressed an unequivocal intention to end his or her employment is no longer entitled to Civil Service Commission review of the circumstances or propriety of an earlier suspension or discharge, that principle should not be construed to render an employee's wrongful discharge immune from challenge merely because when she was discharged she was disabled and her right to retirement benefits had not yet vested.

For these reasons we conclude that Hudson's disability retirement did not divest the Civil Service Commission of authority to rule on her appeal from the Department's discharge of her employment, and to order her employment by the Department restored.

### 3. Hudson's withdrawal of her accumulated retirement contributions from LACERA did not end LACERA's authority to reevaluate her disability status.

The Department argues that the settlement agreement was necessarily intended to end Hudson's right to enforce the Civil Service Commission order, because she had already been granted her disability retirement when the order was entered. The agreement thus "recognized that LACERA had the exclusive authority to modify Hudson nonservice-connected disability status," by providing that the parties would adhere to the

25

outcome of LACERA's determination. But at the same time, the Department argues, LACERA lacked authority to make the determination called for by the agreement; it could not reevaluate Hudson's disability status, because the withdrawal of her accumulated retirement contributions had ended her LACERA membership.

The settlement agreement need not necessarily be interpreted to foreclose either the Department's restoration of Hudson's employment or LACERA's reevaluation of her disability status. It is true that only LACERA can determine whether Hudson is entitled to a disability retirement. (§ 31725; *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 46-47.) And according to Hudson's pleadings, LACERA refused to reevaluate her disability status because she was no longer a LACERA member due to her withdrawal of her retirement contributions. But the Civil Service Commission's order restoring Hudson to her employment does not require that she must be assigned to any duties that she is not currently qualified to perform.[21] If Hudson's employment is restored as the Civil Service Commission has ordered, she will then be a LACERA member. Her previous disability retirement and withdrawal of retirement contributions might affect her ability to redeposit her withdrawn retirement contributions and be restored to her pre-disability-retirement status in LACERA, but it does not affect whether she will be a LACERA member upon restoration as a Department employee. (§ 31552 [county employees become LACERA members].) Upon restoration of her employment, Hudson will be subject to LACERA's evaluation of her capacity to serve, no less than any other employee; Hudson's evaluation will be among LACERA's statutory duties—with or without benefit of the settlement agreement, or redeposit of her withdrawn retirement contributions.[22] (§§ 31729, 31730; see discussion, § III, below.)

---

[21] Section 31725 reserves to the retirement board the determination whether the employee remains permanently disabled; but the determination whether Hudson suffers from a temporary incapacity to perform the duties of her job remains with the Department. (*Phillips v. County of Fresno* (1990) 225 Cal.App.3d 1240, 1257.)

[22] LACERA acknowledged and represented in its motion for judgment on the pleadings, filed November 6, 2012, that upon Hudson's restoration as a Department

The written and oral settlement agreements alleged by Hudson may or may not be enforceable, and if they are enforced they may or may not assist Hudson's cause. But they do not foreclose a determination that under the Civil Service Commission order (with or without the settlement agreements) the Department owes a clear, present and mandatory duty to restore Hudson to its employment, and that Hudson has a clear and present beneficial right to the Department's performance of that duty—entitling its enforcement by mandate. (*California Teachers Assn. v. Governing Board* (1987) 195 Cal.App.3d 285, 295 [mandate may be issued where there is clear, present and usually ministerial duty on the part of the defendant, and a clear, present and beneficial right in plaintiff to performance of that duty].)

### 4. Hudson's mandate action was not necessarily untimely.

The Department did not raise the statute of limitations as a ground for judgment on the pleadings. Its answer to the original complaint had alleged an affirmative defense listing nine code sections allegedly barring "this action," (without identifying which provision might apply to any particular claim); but the Department filed no answer to the first amended complaint, and its challenges to that pleading did not mention any statute of limitations.

Nor did the trial court's order for judgment on the pleadings on the action for mandate address the statute of limitations. However, in ruling on Hudson's reconsideration request the trial court added a previously unstated ground for its judgment on the pleadings order. It found that the longest possible statute of limitations governing the mandate petition would be the three-year statute applicable to "[a]n action upon a liability created by statute," in subdivision (a) of Code of Civil Procedure section 338; and that the time for Hudson to seek mandate against the Department began to run no later than March 24, 2008, when she admittedly had been advised that she had been

_____

employee "she may re-deposit her previously withdrawn retirement funds pursuant to California Government Code § 31652(a), which allows members to redeposit previously withdrawn retirement contributions along with the interest that would have accrued on those funds. Upon completion of the redeposit, membership would be as if it had been unbroken by the termination of County service."

medically released by the Department and would not be reinstated. And on that basis the court ruled that Hudson's petition, filed April 1, 2011, was one week late and could not be amended to show otherwise.

The record does not support this ruling. We conclude that the claim for mandate against the Department is not as matter of law time-barred. Even if a three-year statute of limitations began running on March 24, 2008, the record includes facts that, if established, could be found to have tolled the statute of limitations and prevented its running against Hudson's cause of action.

Hudson's amended pleading alleged that on or about August 5, 2008, the Department entered into an oral agreement that it would assign her to a civilian position in the Department until her disability status could be redetermined by LACERA, and that it would reinstate her as a deputy sheriff if LACERA found her to be medically qualified for that position. And her pleading alleged that in December 2008, the Department entered into written agreement that it would hire Hudson in a temporary position until LACERA could redetermine her disability status, and that it would reinstate her to employment as a deputy sheriff if LACERA found her to be medically qualified. These facts, if established, would support a determination that the Department had effectively withdrawn or agreed to reconsider its notice that it would not reinstate Hudson, or that it had entered into new agreements that it would comply with the order requiring Hudson's restoration to Department employment on specified terms.

Either of these possible interpretations might support application of the discovery rule, preventing the statute of limitations from running until Hudson either discovered, or reasonably should have discovered, that the Department would not restore her employment (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 [discovery rule delays accrual of cause of action and running of statute of limitations until the plaintiff has, or should have, inquiry notice of cause of action]); or the obligation's revival (Code Civ. Proc., § 360 [revival of cause of action by acknowledgement of obligation]); or a determination that the statute of limitations was tolled pending the agreements' performance (*Ashou v. Liberty Mut. Fire Ins. Co.* (2006) 138 Cal.App.4th

28

748, 763, 766-767 [equitable tolling of statute of limitations by defendant's reconsideration of earlier unequivocal denial of claim]; *Aliberti v. Allstate Ins. Co.* (1999) 74 Cal.App.4th 138, 146-149 & fn. 15 [tolling of statute of limitations by equivocal representations concerning promise to pay]). Moreover, the court's ruling on a decisive issue of law not previously raised by any party or the court deprived Hudson of her right to be heard—a substantial right to which she was entitled as a matter of due process. (*Moore v. California Minerals Products Corp.* (1953) 115 Cal.App.2d 834, 837.) For these reasons the statute of limitations cannot justify the trial court's grant of judgment on the pleadings on Hudson's cause of action against the Department for mandate requiring restoration of her employment.

## III. The Denial of Mandate Against LACERA Rests on Errors of Fact and Law

Hudson's pleading alleged that LACERA breached its fiduciary duties by failing to advise her that withdrawing her accumulated retirement contributions would preclude LACERA from reevaluating her disability status and would prevent her restoration to employment with the Department. She contends LACERA's breach gives rise to a mandatory duty on LACERA's part to permit her to redeposit the withdrawn contributions. She seeks mandate requiring LACERA to permit her to redeposit her withdrawn retirement contributions, to reinstate her as a member, and to reevaluate her disability status.

Denying Hudson's mandate petition, the trial court held that by withdrawing her retirement contributions Hudson knowingly waived future retirement benefits, and was entitled to no further advice from LACERA. It based that conclusion on evidence that after the Department had fired Hudson in early 2005, LACERA had provided a brochure advising her that "Taking a withdrawal of [retirement contributions] terminates your membership and you give up all rights to future retirement benefits from LACERA, including disability benefits." She withdrew her accumulated retirement contributions in December 2006, after being advised for the second time that she was in any event entitled to no disability benefits or retirement benefits (because her disability was not sufficiently service-connected and her retirement benefits were not yet vested). Her withdrawal

29

application warned her that "If I choose a withdrawal, I lose all rights to future retirement benefits from LACERA, including disability benefits."[23]

The trial court held that LACERA had no duty to advise Hudson that by withdrawing her retirement contributions she would be precluded from obtaining LACERA's future determination that she is no longer disabled, and that it had no duty to advise her that she would be precluded from being restored to her employment as a deputy sheriff—the remedy she was then seeking from the Civil Service Commission. The court reasoned that because the LACERA brochure had warned that withdrawing retirement contributions would preclude future retirement benefits, and LACERA did not know Hudson was seeking restoration of her employment from the Civil Service Commission, LACERA had no duty to inform Hudson that withdrawing her retirement benefits would prevent reevaluation of her disability status.[24]

LACERA unquestionably owed fiduciary duties requiring it to advise Hudson of the consequences of withdrawing her accumulated retirement contributions, as the trial court acknowledged. That is the central holding in *Hittle v. Santa Barbara County Employees Retirement Association* (1985) 39 Cal.3d 374 (*Hittle*). There, the Supreme Court held that retirement associations such as LACERA have fiduciary duties to fully inform their members of their retirement options. Pension plans "create a trust relationship between pensioner beneficiaries and the trustees of pension funds who administer retirement benefits . . . and the trustees must exercise their *fiduciary trust* in good faith and must deal fairly with the pensioners-beneficiaries." (*Id.* at p. 392; see *Masters v. San Bernardino County Employees Retirement Assn.*, *supra*, 32 Cal.App.4th at pp. 43-44.)

---

[23] The record does not support the trial court's finding that Hudson consulted with her attorney before withdrawing her LACERA contributions. The cited portion of the record shows only that Hudson answered "no" when she was asked whether she had talked "to anyone besides your attorney" before the withdrawal. Neither that answer nor anything else in the record constitutes evidence that she talked with her attorney about it.

[24] As the trial court put it, "LACERA is not in the business of divination."

30

In *Hittle*, a county employee was injured at work; after he stopped working, the retirement association (analogous to LACERA) advised him that he could either withdraw his accumulated retirement contributions or he could choose deferred retirement. Although the retirement association had notice that he might qualify for a disability retirement allowance, it did not fully advise him of that option. The employee withdrew his retirement contributions, thereby rendering himself ineligible for a retirement allowance. The court held that failure to advise the employee of that consequence violated the association's fiduciary duties to the employee. (*Hittle*, *supra*, 39 Cal.3d at p. 393 & fn. 12.)

The court held in *Hittle* that the employee's withdrawal of accumulated retirement contributions could not constitute a waiver of his right to future retirement benefits without a clear affirmative showing that the employee had been advised of that consequence, which the record lacked. "[W]e conclude that the termination of [retirement association] membership by the withdrawal of retirement contributions can be enforced only upon a showing that the decision was an informed one." (*Id.* at p. 380.) "Accordingly, we conclude that Hittle's withdrawal of his retirement contributions cannot be deemed to constitute a valid waiver of his right to apply for disability retirement." (*Id.* at p. 389.)

Here, as in *Hittle*, the substantial evidence test governs review of the trial court's factual determinations. (*Hittle*, *supra*, 39 Cal.3d at p. 388, fn. 9.) The record supports the trial court's findings that LACERA advised Hudson that withdrawing her retirement contributions would end her right to retirement benefits (of which she was told she had none). But the record contains no evidence at all that LACERA fulfilled its affirmative fiduciary duty to advise Hudson that a consequence of withdrawing her accumulated retirement contributions would also be to preclude any future evaluation and revision of her disability status, or to preclude restoration of her employment by the Civil Service Commission.

In fact, the same LACERA brochure that advised Hudson that her withdrawal of retirement contributions would waive any future disability benefits also advised her that

31

even after withdrawing her accumulated contributions she might be eligible for future employment and to redeposit her withdrawn contributions. Under the heading, "Restoration to a Prior Plan," the brochure advised, "If you used to be a safety member in Plan A or Plan B and withdrew your retirement contributions and interest when you terminated your employment with the County, you can restore all the benefits of your former plan if you return to Plan A or Plan B and redeposit the withdrawn contributions plus interest. . . ."[25] It went on to advise that former members who had received a service retirement may be rehired by the county and "may return to active membership in LACERA," by (1) applying for reinstatement, (2) being determined by LACERA not to be incapacitated, and (3) being an eligible permanent employee.

In short, LACERA's advice to Hudson not only failed to advise her that by withdrawing her retirement contributions she would end her right to have her wrongful discharge set aside and have her employment restored, as it now asserts, it seemingly provided affirmative advice that she might be able to "return to active membership in LACERA," to "restore all the benefits of your former plan," and "redeposit the withdrawn contributions plus interest. . . ." These statements—contradictory at best— could support a determination that LACERA failed to fulfill its affirmative fiduciary duties to advise Hudson of the consequences of withdrawing her accumulated retirement contributions.

LACERA's duty to advise Hudson of the consequences of withdrawing her accumulated retirement contributions does not depend on whether LACERA knew that she was seeking restoration of her employment and might again become physically able to perform the duties of a deputy sheriff. As the Supreme Court ruled in *Hittle*, the retirement association must meet its fiduciary obligations to fully inform its members, "notwithstanding the extent of the Association's knowledge of each member's particular situation or entitlement." (*Hittle*, *supra*, 39 Cal.3d at pp. 393-394.) In this case, although LACERA may have been unaware that Hudson was then contesting her firing by the

_____

[25] According to the LACERA brochure, as a deputy sheriff hired after September 1, 1977, Hudson apparently had been a safety member in Plan B.

32

Department and was undergoing surgeries to overcome her disabling circumstances, it surely was generally aware that employees who have been retired for disabling physical conditions may later become fit to return to employment, a possibility that the law expressly contemplates. (§§ 31729, 31730, 31733.)[26] It knew also that only LACERA could make that determination (§§ 31725, 31730, 31733)—and that it could not do so if a member had withdrawn his or her accumulated contributions. Nevertheless, LACERA's advice to its members of the consequences of withdrawing accumulated retirement contributions does not mention any consequences at all except loss of future retirement benefits, and its brochure might be understood to represent that as a safety officer, Hudson might obtain the remedies that LACERA now denies.

The trial court's finding that LACERA fulfilled its duty to inform Hudson of the consequence of withdrawing her accumulated retirement contributions therefore is not supported by the record. For that reason its denial of mandate against LACERA must be reversed.[27] The claim will be remanded to the trial court for further proceedings to determine this issue on its merits.

---

[26] LACERA's Disability Retirement Specialist Supervisor testified in deposition that employees who have been given a disability retirement can later seek LACERA's reevaluation of their disability status as long as they have not terminated their LACERA membership by withdrawing their accumulated retirement contributions.

[27] The court's finding that Hudson was guilty of unclean hands does not support the ruling denying mandate against LACERA. Having held that Hudson had been adequately advised of the consequences of withdrawing her accumulated retirement contributions, the court concluded also that Hudson "does not come into court with clean hands," because her sworn and unsworn statements about her past and present disabilities and intentions reflect misrepresentations of material fact at best, and "[a]t worst, she has come close to committing perjury." Hudson is entitled to have her statements, understandings, and intentions interpreted in conjunction with a redetermination of her rights to relief against LACERA, rather than in the context of the unsupported factual findings and erroneous legal conclusions discussed above. (See *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15-16 [If court's decision is influenced by erroneous understanding of applicable law, it has not properly exercised its discretion under the law].) For this reason the trial court's findings of unclean hands cannot alone justify the denial of mandate against LACERA, and must also be reversed.

33

**IV. The Trial Court Erred by Striking the First and Second Causes of Action of the First Amended Complaint Without Leave to Amend**

**A. The Amended Pleading did Not Violate the Order Granting Leave to Amend the Original Complaint**

The original complaint's first cause of action pleaded a claim for specific performance of the alleged December 22, 2008 written settlement agreement that Hudson would be reinstated as a temporary employee of the Department until her disability status could be reevaluated by LACERA, and then, depending on the outcome of that reevaluation, she would be reinstated either as a deputy sheriff or as a custody assistant. The trial court granted judgment on the pleadings in the Department's favor as to that claim, with leave to amend. Hudson did not amend her specific performance claim, but instead pleaded claims that the Department's conduct violated her rights to substantive and procedural due process under civil rights laws, title 42 United States Code section 1983.

The Department then argued (among other things) that the amended claims exceeded the scope of the court's leave to amend. The trial court agreed: "Yes, what I allowed was leave to amend to plead, if [Hudson] could, compliance with a tort claims act, which I suspect[ed] that she couldn't do." But "I didn't give you leave to file a 1983 cause of action, that's the problem. I only gave you leave to cure the contract claim." On that basis the court struck the first and second causes of action of the amended pleading, without leave to amend.

The record does not support the trial court's recollection that it had granted leave to amend only to allege compliance with the Tort Claims Act, or that it had precluded any amendment except for breach of contract seeking specific performance. Tort Claims Act compliance had not been among the issues mentioned at the hearing on the motion to strike, or by the trial court's order granting the motion. The court had explained that "the basis for my [tentative] ruling is basically that I agree with the county that specific performance is just not available here because it's a personal services contract, which would necessarily be "essentially an order from the court that the defendants employ her.

34

And under Civil Code 3390, Subsection 2, that's impermissible." The court granted leave to amend to cure the identified defect despite its "serious concerns that there is any basis for amendment here because the statute so clearly precludes a specific performance on a personal services [contract]. But in an effort to be fair, I'll grant leave to amend, but I don't honestly see that specific performance is something that can be amended." The ruling did not mention claims act compliance.

The Department's reliance on *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, in support of the ruling is misplaced. That case held that an amendment to add a cause of action was not "within the scope of the order granting leave to amend," but it did not identify either the order granting leave at the previous hearing, or the trial court's limitation on the scope of a permissible amendment. Thus, it does not hold that the pleading of "an entirely new cause of action" necessarily violates the scope of an order granting leave to amend. It cites with approval the case of *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1015, holding that an amendment is permissible if it "'directly responds' to the trial court's reason" for sustaining the underlying demurrer. And its only supporting citation on the issue is to a case holding that leave to amend does not constitute leave *to add a new defendant*—an issue not involved either in *Harris v. Wachovia Mortgage, FSB*, or in the case at hand. (*Id.* at p. 1023.)

Even if the trial court had discretion to deny leave to amend at the hearing on the original complaint, it did not. The leave to amend it granted neither expressly nor impliedly precluded Hudson from pleading claims that would entitle her to relief without specific performance of the settlement agreement that the court had held to be unenforceable.

The ruling striking the amended pleading's first and second causes of action without leave to amend, on the ground that they were in violation of the grant of leave to amend and without consideration whether they state viable claims, therefore must be reversed. (*Quelimane Co. v. Stewart Title Guaranty Co.*, *supra*, 19 Cal.4th at p. 38 [if a complaint does not state a cause of action, but there is a reasonable possibility that the defect can be cured by amendment, leave to amend must be granted]; *Blank v. Kirwan*

(1985) 39 Cal.3d 311, 318 [same].)  The superior court can address in future proceedings whether the amended pleading's claims are sufficient to support the relief they seek and, if they are not, whether further amendment should be permitted.  (*Lucas v. State of California*, *supra*, 58 Cal.App.4th at p. 748, fn. 3 [when trial court did not reach issue whether claims adequately plead necessary elements, it is appropriate to leave the issue for future determination by proceedings in the superior court].)

**B.  The Trial Court Erred in Ruling that the Written Settlement Agreement can be Interpreted Only as a Contract that Would Necessarily Violate Civil Code Section 3390**

Hudson argues on appeal that the trial court erred by striking the original complaint's first cause of action on the erroneous ground that the alleged settlement agreement is unenforceable as a matter of law under Civil Code section 3390.[28]  The original complaint sought the Department's performance of its obligations under the alleged agreement, leading to restoration of Hudson's employment with the Department.

Contrary to the Department's response, Hudson's failure to amend her claim for specific performance of the written settlement agreement does not bar her appeal from the trial court's grant of judgment on the pleadings.  And contrary to the trial court's grant of judgment on the pleadings, the written settlement is susceptible to meanings that would not necessarily require its interpretation as an unenforceable personal-services employment contract, necessarily in violation of Civil Code section 3390 and *Barndt v. County of Los Angeles* (1989) 211 Cal.App.3d 397.

---

[28] Civil Code section 3390 provides in subdivision 2 that "The following obligations cannot be specifically enforced: [¶] . . . [¶] 2. An obligation to employ another in personal service."

36

**1. Hudson's failure to amend her claim for specific performance of the settlement agreement does not bar her appeal from the trial court's grant of judgment on the pleadings.**

The Department argues that Hudson's failure to amend her claim for specific performance of the settlement agreement bars her appeal from the order granting judgment on the pleadings. It correctly cites *Goldtree v. Spreckels* (1902) 135 Cal. 666, 672, and *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 785, for the proposition that when a general demurrer is sustained with leave to amend, and the plaintiff then declines to amend the claim, the plaintiff "practically confesses" that the pleading contains the facts that are contended to be essential to the claim. But that omits the critical point: If the plaintiff stands on her pleading after the demurrer is sustained but is not satisfied with the ruling, she "has [her] remedy on appeal." (*Wells v. Marina City Properties, Inc.*, *supra*, 29 Cal.3d at p. 785.)

Here, as the Department argues, Hudson did not amend her claim for specific performance of the settlement agreement, but instead pleaded claims under the civil rights laws. By doing so she thereby stood on her pleading, preserving her right to appeal from the order granting judgment on the pleadings on the specific performance claim.

**2. Because the alleged settlement agreement might be interpreted in ways that would not violate Civil Code section 3390's proscription against contracts for personal-service employment, the trial court erred in striking the first cause of action of the First Amended Complaint.**

Unless a document contained in a pleading or brought to the court by judicial notice is subject to only one permissible interpretation, a court may not determine its proper interpretation without the parties' opportunity to present extrinsic evidence of the document's meaning. (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 [judicial notice of document does not establish document's proper interpretation]; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114-115 ["The hearing on demurrer may not be turned into a contested evidentiary hearing

37

through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable"].)

The settlement agreement alleged in the first cause of action of the original complaint was made an exhibit to the pleading. It provides that the Department would hire Hudson as a custody assistant (for which the Department conceded she was qualified without reevaluation of her disability), that Hudson would "as soon as possible, take all steps necessary" to obtain LACERA's reevaluation of her disability status, and that "in the event LACERA determines she is no longer disabled, the Department shall restore Ms. Hudson to her previously held position of Deputy Sheriff pursuant to Civil Service."

Although the trial court held as a matter of law that that the agreement must necessarily be interpreted as an agreement for personal-services employment in violation of Civil Code section 3390, we conclude that it might be interpreted in ways that would not necessarily violate that provision.[29] It recites that it is intended "to settle all disputes and issues" in "the above-referenced matter"— Civil Service Commission case No. 08-146, Hudson's then-pending appeal from the Department's allegedly retaliatory medical release. The agreement could be interpreted to tacitly recognize the Department's legal obligation under the Civil Service Commission order to restore Hudson to employment in some capacity, depending on her current disability status. It therefore could be interpreted merely to resolve the parties' disputes about procedures by which the Department can and will meet its legal obligations, consistent both with the Civil Service Commission order and the rules that govern the Department and LACERA. Under such an interpretation it is the order, not the agreement, that requires Hudson's employment. Again, the agreement's actual interpretation and enforceability must await further trial court proceedings.

---

[29] We do not examine in this appeal the precise scope of Civil Code section 3390's limits on orders for specific performance. However the trial court's broad interpretation would seem to categorically preclude (for example) any administrative or judicial order or settlement that could lead to the reinstatement of a civil servant or other employee who was alleged to have been wrongfully discharged—a result with far-reaching and arguably unintended consequences.

**Conclusion**

The rulings striking Hudson's claims and for judgment on the pleadings on the claims against the Department, and the order denying the petition for writ of mandate against LACERA, are unsupported. For these reasons the judgments in favor of the Department and LACERA must be reversed, and the pleadings restored for further proceedings in the superior court.

**Disposition**

The judgment against Hudson and in favor of the Department and LACERA is reversed. The superior court is directed to: (1) vacate its order granting judgment on the pleadings on the first cause of action of the original pleading by Hudson against the Department; (2) vacate its order granting judgment on the pleadings on the first and second causes of action of the first amended complaint; and (3) vacate its order granting judgment on the pleadings on the third cause of action of the first amended complaint. Whether Hudson will be able to establish the required facts and to overcome any future factual and legal defenses interposed by the defendants remains to be determined. Hudson is entitled to her costs on appeal.

                                    CHANEY, Acting P. J.

We concur:


          JOHNSON, J.



          MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/15/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MONIQUE HUDSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, LEROY BACA, and LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION,<br><br>    Defendants and Respondents. | B247593, B248983<br><br> (Los Angeles County<br> Super. Ct. No. BC458667)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed in the above-entitled matter on November 14, 2014, was not certified for publication in the Official Reports.  Pursuant to California Rules of Court, rule 8.1105(c), this opinion is ordered published in the Official Reports with the exception of parts III and IV.

Respondents petition for rehearing is denied.

_____

CHANEY, Acting P. J.              JOHNSON, J.              MILLER, J.[*]

_____

   [*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.