[No. B211625. Second Dist., Div. Eight. Dec. 18, 2009.]

COUNTY OF LOS ANGELES DEPARTMENT OF HEALTH SERVICES,
Plaintiff and Respondent, v.
CIVIL SERVICE COMMISSION OF THE COUNTY OF LOS ANGELES,
Defendant, MARGARET LATHAM, Real Party in Interest and Appellant.

392

## COUNSEL

Posner & Rosen, Howard Z. Rosen and Jason C. Marsili for Real Party in Interest and Appellant.

Hausman & Sosa, Jeffrey M. Hausman and Larry D. Stratton for Plaintiff and Respondent.

No appearance for Defendant.

## OPINION

**RUBIN, Acting P. J.**—This appeal presents a single question of law for our determination: Where civil service rules vest a civil service commission with

jurisdiction over an employee's appeal of her discharge, including an attendant claim for a resulting loss of pay, does the employee's retirement during the pendency of civil service proceedings divest the commission of jurisdiction over the civil service appeal? Taking our lead from the opinion in *Zuniga v. Los Angeles County Civil Service Com.* (2006) 137 Cal.App.4th 1255 [40 Cal.Rptr.3d 863], we answer the question "yes."

## FACTUAL AND PROCEDURAL BACKGROUND

In 1972, the County of Los Angeles Department of Health Services (the Department) hired Margaret Latham as a staff nurse. By 1998, the Department had promoted Latham through the ranks to an administrative position as an assistant nursing director, where she oversaw the Nursing Resource Center. In that position, Latham had responsibilities over staffing and budgeting matters, collective bargaining, employee personnel issues, nursing practice standards, workload statistics, and performance improvement activities. As required by regulations governing patient care, the Department, under Latham's supervision, operated a patient classification system to assign "acuity" numbers to patients to determine and coordinate required levels of care and staffing.[1]

On January 23, 2004, the Department suspended Latham without pay, pending an investigation into allegations of "inappropriate activity in connection with the reporting of patient acuity levels." On February 22, 2004, the Department reassigned Latham to "work at home." In March 2004, the Department informed Latham by letter that it had affirmed its decision to suspend her without pay for the period from January 23, 2004, through February 21, 2004.

On July 20, 2004, the Department notified Latham of its intent to discharge her. By letter dated September 14, 2004, the Department notified Latham that she would be discharged effective September 20, 2004.

On a date uncertain, Latham filed an appeal with the Civil Service Commission of the County of Los Angeles (the Commission), challenging two employment actions taken by the Department: (1) the initial decision of

---

[1] For example, the Department's classification system assigned a Level 1 rating to patients who required "minimum routine care," a Level 2 rating to patients who required "average care," a Level 3 rating to patients who required "above average care," and a Level 4 rating to those patients who required "almost constant care."

January 23, 2004, suspending her without pay for 30 days pending an investigation, and (2) the final decision of September 20, 2004, discharging her from the Department.

In November 2005, a hearing officer assigned by the Commission began receiving evidence on Latham's civil service appeal.

Six months later, on May 16, 2006, *before* the Commission hearing officer issued a decision on Latham's civil service appeal, Latham voluntarily retired. Latham did not advise either the Commission or the Department of her retirement, and, on July 28, and August 31, 2006, the Commission hearing officer concluded the hearing.

On September 28, 2006, the Commission's hearing officer issued an extensive, 27-page report in Latham's civil service appeal. Broadly summarized, the hearing officer's report included a series of factual findings regarding various omissions and errors by Latham, and/or the staff which she oversaw, primarily connected with the Department's classification system. Despite these factual findings, the hearing officer concluded as matters of law that (1) the Department had wrongly suspended Latham for 30 days without pay pending its initial investigation because her errors and omissions had not presented any "emergency circumstances" justifying a preinvestigation suspension; (2) the Department's evidence did not show that discharge was the appropriate discipline for her errors; and (3) the Department's evidence showed that the appropriate discipline for Latham's errors was a 30-day suspension.

As of February 12, 2007, Latham's appeal was still pending before the full Commission. On that date, the Department delivered a letter motion to the Commission, requesting that it "immediately dismiss" Latham's appeal on the ground that the Commission had lost jurisdiction over the matter. According to the Department's letter, Latham's retirement had recently come to its attention, and her intervening retirement meant that any further proceedings by the Commission would be "meaningless" because Latham could not be reinstated once she had retired.[2]

On April 11, 2007, the Commission issued its final opinion, rejecting the dismissal request and largely adopting its hearing officer's report. The ultimate decision imposed a reduction in rank, not suspension.

---

[2] The Department's letter did not explicitly explain when, or under what circumstances, it had "recently" learned of Latham's retirement.

On July 3, 2007, the Department filed in superior court a petition for writ of administrative mandamus challenging the Commission's decision. The Department's petition sought a writ commanding the Commission to vacate its decision on Latham's civil service appeal, and then to dismiss her appeal on the ground that her retirement had divested the Commission of jurisdiction to render any decision in her civil service appeal.

On September 8, 2008, the trial court entered judgment granting the Department's petition for writ of administrative mandamus. On September 11, 2008, the clerk of the superior court issued a writ in accord with the trial court's judgment.

On October 8, 2008, the Commission complied with the writ and issued an order setting aside its April 2007 decision in favor of Latham, and adopted a new final decision dismissing Latham's civil service appeal.

On October 20, 2008, Latham filed a timely notice of appeal from the trial court's judgment.

## DISCUSSION

### A. *Latham's Appeal Is Not Moot*

Before addressing the merits of Latham's assignments of error on appeal, we consider the assertion by the Department that her appeal is moot and should be dismissed. According to the Department, the fact that the Commission complied with the trial court's writ, and has changed its April 2007 decision, means that Latham's current appeal is moot. The Department is wrong.

None of the legal authorities cited by the Department supports its proposition that no relief would be available to Latham in the event we were to rule that the trial court erred when it granted the Department's writ petition. Those authorities do not hold that, when a trial court's judgment granting a writ petition is reversed on appeal, the trial court is nonetheless precluded by law from recalling a writ that it has issued in accord with the judgment, nor do any of the authorities cited by the Department hold that an administrative agency such as the Commission is precluded by law from vacating an order issued in response to an improvidently issued writ, and reinstating a prior order issued before the writ. This case does not, as the Department suggests,

present circumstances where our court would be "unable to fashion an effective remedy . . . ." (*In re Pablo D.* (1998) 67 Cal.App.4th 759, 761 [79 Cal.Rptr.2d 247] [reunification services already received by parents could not be rescinded].)

## B. *Latham's Retirement Divested the Civil Service Commission of Jurisdiction*

 Latham contends the trial court erred in ruling that the Commission lost jurisdiction over Latham's civil service appeal, including her attendant claim for backpay, at the moment she retired. More specifically, Latham argues her election to retire in May 2006 did not eliminate her claims that she should have kept her job, and therefore should have been paid from September 2004, when the Department discharged her, to May 2006, when she took her retirement. We agree with Latham that the backpay issue remains unresolved, but we also agree with the trial court that, once Latham retired, the Commission was no longer the proper forum—that it lacked jurisdiction—to decide Latham's claim for backpay.

### 1. *The Legal Framework*

Latham and the Department agree that her current case is governed by *Zuniga v. Los Angeles County Civil Service Com., supra,* 137 Cal.App.4th 1255 (*Zuniga*), with each arguing for a different result based on their respective readings of the case. Inasmuch as *Zuniga* is the starting point for both parties' arguments, we begin with our own analysis of that case.

In *Zuniga,* the Los Angeles County Sheriff's Department (Sheriff's Department) suspended a deputy sheriff without pay when he was criminally charged with grand theft and attempted receipt of stolen property. (See L.A. County Civil Service Com. Rules, rule 18.01(A) ["an employee may be suspended by the appointing power . . . until . . . the expiration of 30 calendar days after the judgment of conviction or the acquittal of the offense charged in [a criminal] complaint or indictment has become final"].)[3] The deputy requested a hearing before the Commission to challenge his suspension without pay. A hearing was granted and held in abeyance until the deputy's criminal case was concluded. The deputy served his suspension for 10 months, during which time his criminal case remained unresolved, and then elected to take retirement. (*Zuniga, supra,* 137 Cal.App.4th at p. 1257.)

---

[3] All further rule references are to the Los Angeles County Civil Service Commission Rules.

Two weeks after the deputy retired, the criminal case against him was dismissed. Five months later, the deputy's civil service appeal of his suspension without pay came before a hearing officer appointed by the Commission. At the conclusion of the hearing, the hearing officer rejected the Sheriff's Department's position that the deputy's suspension had been proper simply because he had been *charged* in a criminal case. Instead the hearing officer accepted the deputy's claim that no discipline was warranted because the Sheriff's Department had not presented evidence supporting the truth of the criminal charges. The hearing officer recommended that the deputy receive full backpay for the suspension period. The Commission rejected the recommendation of its hearing officer, and, instead, sustained the suspension without pay because the Sheriff's Department had met its burden by showing the deputy had been charged with two felonies. It concluded a suspension was appropriate while criminal charges were pending. (*Zuniga, supra*, 137 Cal.App.4th at p. 1258.)

The deputy then filed a petition for writ of administrative mandate, challenging the Commission's decision to sustain his suspension without pay. The trial court denied the deputy's writ petition, and Division Four of our court affirmed the trial court's judgment although for different reasons:

■ " 'A civil service commission created by charter has only the special and limited jurisdiction expressly authorized by the charter. [Citation.]' [Citation.] Section 34 of the Los Angeles County Charter provides that the Commission 'shall serve as an appellate body in accordance with the provisions of Sections 35(4) and 35(6) of this article and as provided in the Civil Service Rules. [¶] The Commission shall propose and, after a public hearing, adopt and amend rules to govern its own proceedings.' Section 35(4) of the Los Angeles County Charter requires the Board of Supervisors to adopt rules to provide for procedures for appeal of allegations of discrimination. [Section 35(6) of the Los Angeles County Charter requires that the rules provide for Civil Service Commission hearings on appeals of discharges and reductions of permanent employees.]

■ "There is no provision in the charter granting the Commission authority to hear a wage claim brought by a former civil servant. The Civil Service Rules allow the Commission to exercise authority over former employees in only a few limited circumstances. Rule 4.01 grants '[a]ny employee . . .' the right to 'petition for a hearing before the commission who is: [¶] A. Adversely affected by any action or decision of the director of personnel concerning which discrimination is alleged as provided in Rule 25;

[¶] B. Adversely affected by any action or decision of the commission made without notice to and opportunity for such person to be heard other than a commission decision denying a petition for hearing; [¶] C. Otherwise entitled to a hearing under the Charter or these Rules.' The term '[e]mployee' is defined in Rule 2.24 as 'any person holding a position in the classified service of the county. It includes officers.'

■ "Rule 18.01 allows the county to suspend an employee who has been the subject of a criminal indictment for up to 30 days after a final judgment in the case. A suspended employee may then petition for a hearing pursuant to Rule 4. After the dismissal of criminal charges, the Commission has 30 days to conduct an administrative investigation and determine whether administrative discipline is warranted. (See Rule 18.01(A).)

"Zuniga requested a hearing on the suspension during his employment, but resigned before the hearing was held. The Commission does not retain jurisdiction over a former employee in these circumstances." (*Zuniga, supra*, 137 Cal.App.4th at p. 1259.)

After explaining that neither the Charter nor the Civil Service Rules expressly conferred jurisdiction on the Commission to hear a wage claim by a former employee, Division Four explained why the deputy's arguments for a different result were not persuasive:

■ "Zuniga incorrectly compares his situation to that of employees who have been wrongfully terminated or suspended, over whom the Commission retains jurisdiction. Rule 18.09 governs resignations. It provides that a resignation may not be withdrawn, and may only be appealed if it was 'obtained by duress, fraud, or undue influence.' A discharged employee also has the right to request a hearing before the Commission. (Rule 18.02(B).) Zuniga does not claim that he resigned as the result of duress, fraud, or undue influence. Nor was he discharged. There is no provision in the charter or Civil Service Rules giving the Commission authority over an employee who voluntarily resigns without claiming duress, fraud, or undue influence. Without an express grant of such jurisdiction, the Commission lacked authority to investigate the charges and award backpay to Zuniga. [Citations.]

"In a petition for rehearing, Zuniga argues that he did not 'resign,' but instead 'retired,' and that the distinction is significant because the Commission retains jurisdiction in the cases of retirement. We disagree. As we understand the county's system and others like it (e.g., State Personnel Board and the

Public Employees' Retirement System), the activating event is separation from service, whether by retirement, resignation, death, or discharge. The point at issue is the jurisdiction of the civil service agency—the Commission. Once a person has separated from service, the Commission has no further jurisdiction except in the limited situations specified in the governing constitutional charter or statutory provisions. As we have discussed, none of these apply in this case. It appears that Zuniga applied for and received retirement from the Board of Retirement of the Los Angeles County Employees Retirement Association, thereby effecting a separation from service. This voluntary separation from service constituted a resignation from employment. [Citation.] [¶] . . . [¶]

"The [Sheriff's] Department argued to the Commission that it [(i.e., the Sheriff's Department)] lacked authority to conduct an administrative investigation because Zuniga resigned before it could determine whether he was rightfully suspended. . . . Apparently, the [trial] court had the issue in mind when it said in its statement of decision that '[d]ue [p]rocess does not require that Petitioner should be rewarded with back pay for retiring before the criminal charges were dismissed, thus precluding the [Sheriff's] Department from conducting an administrative investigation of Petitioner and possibly imposing administrative discipline.'

"Zuniga also argues that jurisdiction is not at issue because he was employed by the [Sheriff's] Department at the time he filed the request for a hearing. Zuniga was a county employee at the time he requested the hearing, but his voluntary resignation left the Commission with no authority over the merits of his case. As we have discussed, the Commission has authority only over current employees, except where the rules provide otherwise. As we also have seen, they do not; Rule 4.01 applies only to those who maintain their employment throughout the administrative process.

"We therefore conclude that the trial court acted properly to uphold the Commission's rejection of Zuniga's claim for backpay." (*Zuniga, supra,* 137 Cal.App.4th at pp. 1259–1261.)

### 2. The Zuniga *Analysis in the Context of Discharge Followed by Retirement*

Citing *Zuniga, supra,* 137 Cal.App.4th at page 1260, Latham contends that the "activating event" which triggered the Commission's jurisdiction was her discharge. Although it appears to us that Latham misunderstands Division Four's use of the phrase "activating event" in its *Zuniga* opinion, we agree with Latham's fundamental assertion that the Commission had jurisdiction over her civil service appeal at the time she first contested her discharge.

Latham's case does not end there. Rather, subsequent events create the following issue for us: Where the Commission *initially* has jurisdiction over a discharged employee's civil service claim, does the employee's retirement divest the Commission of jurisdiction?

■ Latham argues that her subsequent retirement did not "negate the fact that she had been discharged [20] months earlier," and did not "alter the nature of her separation from employment" with the Department, and that, for these reasons, the Commission retained jurisdiction over her civil service claims. We agree with Latham's assertion that her retirement had no transformative effect on her discharge to the extent that, if the discharge was unlawful, her retirement did not "cure" the unlawfulness. We see the issue as more temporal than substantive. *Zuniga* stands for the bright-line proposition that, where an employee retires during the pendency of a civil service appeal, her future status as an employee by definition is no longer at issue. The then pending appeal becomes a "wage claim brought by a former civil servant," and under *Zuniga* the Commission has no jurisdiction over such a wage claim because neither the charter nor Civil Service Rules vest such jurisdiction. (*Zuniga, supra,* 137 Cal.App.4th at p. 1259.) In short, the Commission has authority to address only matters involving a member of the civil service, and a person who has retired is no longer a member of the civil service.

Latham argues that this case is different from *Zuniga* because the hearing officer took significant testimony before she retired. That is a factual difference that does not change the legal analysis. It is true that testimony was taken here and not in *Zuniga*. But in both cases, the civil service appeal had commenced before the employee retired. If there were a "once jurisdiction vests it vests forever" rule, then *Zuniga* would have come out the other way. Pointedly the *Zuniga* court rejected such a claim, concluding "[t]he Commission does not *retain* jurisdiction over a former employee in these circumstances." (*Zuniga, supra,* 137 Cal.App.4th at p. 1259, italics added.) At the time of resignation—whether evidence has been received or not—the underlying claim essentially becomes one for backpay. As *Zuniga* teaches, "Without an express grant of such jurisdiction, the Commission lacked authority to investigate the charges and award backpay to [the employee]." (*Id.* at p. 1260.)[4]

---

[4] We hold only that Latham's retirement affected the availability of relief through civil service, and we express no view on whether she has a viable civil claim for backpay which may be asserted in another forum. (See L.A. County Code, § 6.20.100, subd. (B).) As Division Four of our Court explained in *Berumen v. Los Angeles County Dept. of Health Services* (2007) 152 Cal.App.4th 372 [60 Cal.Rptr.3d 890]: " 'Commission jurisdiction must be based on express authority in the charter, not on the absence of any other designated forum.' " (*Id.* at p. 380, citing *Hunter v. Los Angeles County Civil Service Com.* (2002) 102 Cal.App.4th 191, 197 [124 Cal.Rptr.2d 924], and *Zuniga, supra,* 137 Cal.App.4th at p. 1260.) "There is no

## DISPOSITION

The trial court's judgment entered September 8, 2008, is affirmed.

Flier, J., and Mohr, J.,[*] concurred.

---

provision in the charter granting the Commission authority to hear a wage claim brought by a former civil servant." (*Zuniga, supra*, at p. 1259.)

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.