Filed 1/28/16

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ROBERT HUGHES, | |
| Plaintiff and Appellant, | E060294 |
| v. | (Super.Ct.No. CIVDS1301580) |
| COUNTY OF SAN BERNARDINO, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. David Cohn, Judge. Reversed with directions.

Law Office of Michael A. Morguess and Michael A. Morguess for Plaintiff and Appellant.

Gutierrez, Preciado & House and Calvin House for Defendant and Respondent.

Plaintiff and appellant Robert Hughes, a retired sheriff's deputy, challenges the judgment of dismissal after the trial court sustained without leave to amend the demurrer to his amended petition for writ of mandate and administrative mandate. The demurrer was filed by defendant and respondent County of San Bernardino (the County). Hughes

1

sought to compel the County to complete the administrative appeal process from a disciplinary action.  Hughes initiated the administrative appeal under the County's civil service rules, but missed the scheduled hearing after suffering a heart attack.  Hughes retired for medical reasons before the hearing could be rescheduled.  The County declined to reschedule after Hughes retired, arguing he was no longer an employee entitled to an administrative appeal.  Defendant San Bernardino Civil Service Commission (the CSC), after requesting briefing from Hughes and the County, ruled that it had no jurisdiction to continue with the appeal.  We reverse the order dismissing the amended petition and remand to the trial court with directions to enter a new order overruling the County's demurrer.

## I.  FACTS AND PROCEDURE

According to the verified petition, Hughes was a sheriff's deputy for the County for more than 30 years.  In September 2009, Hughes was served with allegations of misconduct, which resulted in a 15-day suspension and the loss of about $7,000 in wages.

Hughes filed an administrative appeal with the CSC.  In September 2011, Hughes suffered a heart attack and was put on medical leave.  Also in September 2011, Hughes's counsel appeared at the hearing on his administrative appeal before the hearing officer.  Hughes was unable to appear because he was in the hospital.

Hughes's counsel entered into a tentative oral settlement agreement with the County without authorization from Hughes.  The hearing officer had the tentative

2

agreement placed on the record with directions to the County to prepare a written settlement agreement. The County did not prepare a written agreement.

In March 2012, Hughes obtained new counsel. Also in March 2012, Hughes's counsel asked the CSC to continue with the administrative appeal. The County objected, arguing the matter had been settled pursuant to the tentative settlement agreement. The CSC asked the parties to submit briefs on the issue.

In March 2012, while this issue was pending before the CSC, Hughes retired from the County because of a medical condition. He applied for conversion to an industrial disability retirement.

On June 13, 2012, the CSC denied Hughes's request to continue with the administrative appeal.

After the CSC denial, Hughes asked the County to engage in an administrative appeal pursuant to due process requirements and Government Code section 3304, subdivision (b), which is part of the Public Safety Officers Procedural Bill of Rights Act (POBRA). (Gov. Code, § 3300 et seq.)[1] The County denied the request on the bases Hughes had retired and that the parties had entered into a settlement agreement.

On May 24, 2013, Hughes filed an amended petition for writ of administrative and ordinary mandate under Code of Civil Procedure sections 1085 and 1094.5 and Government Code section 3309.5, and a complaint for violations of the California Fair

_____

[1] All further statutory references are to the Government Code unless otherwise indicated.

Employment and Housing Act (FEHA). The four causes of action were: (1) writ of mandate requiring the CSC to provide Hughes with an administrative hearing; (2) writ of administrative mandate requiring the CSC to provide Hughes with an administrative hearing; (3) writ of mandate and/or affirmative injunctive relief under POBRA (Gov. Code, § 3304, subd. (b));[2] and (4) FEHA disability discrimination (Gov. Code, § 12940, subd. (a)), prohibiting employment discrimination on the basis of a "medical condition."

On or about July 5, 2013, the County filed its demurrer. For the first two causes of action, the County argued: (1) Hughes was afforded an opportunity for a hearing even though the hearing never took place, and (2) the CSC lacked jurisdiction to hold the requested administrative hearing after Hughes retired. For the third cause of action, the County argued: (1) Hughes was afforded an opportunity for a hearing even though the hearing never took place, and (2) Hughes lost his right to a hearing under section 3304 when he retired. For the fourth cause of action, the County argued: (1) Hughes was not deprived of a term, condition or privilege of employment, and (2) the County cannot be held liable for advocating its position before the CSC.

Hughes filed his opposition on August 9, 2013.

The County filed its reply to Hughes's opposition to its demurrer on August 14, 2013.

---

[2] Section 3304, subdivision (b) states: "No punitive action . . . shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period . . . without providing the public safety officer with an opportunity for administrative appeal."

4

The trial court held a hearing on the County's demurrer on August 22, 2013, and took the motion under submission. On September 13, 2013, the court sustained the County's demurrer on Hughes's entire amended petition, without leave to amend. The minute order states the court's reasoning as follows: "The court finds that when the anticipated settlement did not come to fruition, petitioner's remedy was to request the commission to reschedule the hearing, which he did, but then to postpone his retirement until he had obtained a ruling by the commission on whether to reschedule the hearing. If the commission declined to hold a hearing, the petitioner's remedy would have been to seek a writ of mandate to compel the commission to hold a hearing while petitioner was still employed. The civil service commission lost jurisdiction upon petitioner's retirement. [*Zuniga v. Los Angeles Civil Service Com.* (2006) 137 Cal.App.4th 1255, 1258-1260; *County of Los Angeles Dept. of Health Services v. Civil Service Com. of County of Los Angeles* (2009) 180 Cal.App.4th 391, 401 (*DHS*).] The County of San Bernardino is not required to provide an alternative forum for a hearing in the absence of jurisdiction by the commission."

The judgment of dismissal was filed on October 18, 2013. The notice of entry of judgment was filed on December 17, 2013. Hughes filed his notice of appeal on the same day.

## II. DISCUSSION

A. *Standard of Review*

The appellate court reviews de novo the trial court's ruling sustaining a defendant's demurrer without leave to amend. (*Schauer v. Mandarin Gems of Cal., Inc*. (2005) 125 Cal.App.4th 949, 955.) "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]" (*Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 966-967.)

B. *Hughes Was Not Afforded an Opportunity for a Hearing*

The common element of the County's demurrer to the first three causes of action is that "Hughes was afforded an opportunity for a hearing," even though the hearing was not actually held. As discussed below, this aspect of the County's demurrer fails.

The County based the assertion that Hughes was afforded an opportunity for a hearing on its position that "the appeal had been settled in September 2011" and on case law holding that a public entity may enforce procedural rules that result in an actual hearing not being held without denying a plaintiff the *opportunity* to be heard. (*Boddie v. Connecticut* (1971) 401 U.S. 371, 378 ["A State[] can, for example, enter a default

judgment against a defendant who . . . without justifiable excuse, violates a procedural rule requiring the production of evidence necessary for orderly adjudication . . . ."].) However, the County does not point to any procedural rules it followed that resulted in the hearing not being held. Rather, the County relies completely on the tentative settlement agreement for its assertion that Hughes was given the opportunity for an administrative hearing, which it argues was not held "through no fault of the County." This argument is completely undermined, however, when the County correctly concedes in its responsive brief that the tentative agreement was not enforceable under the law. Whether under *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 404 (an attorney has no implied or ostensible authority to settle a cause of action or impair the client's substantial rights without the client's authorization) or because the County never reduced the agreement to writing,[3] Hughes did not agree to and did not receive consideration in exchange for giving up his then undisputed right to an administrative hearing on the discipline matter. For this reason, we conclude that Hughes was deprived of even the opportunity for a hearing.

---

[3] The County does not dispute the following allegations in the amended verified petition: "9. Without [Hughes's] authority, his then counsel entered into a tentative settlement agreement with the County employer, and the tentative agreement was placed on the record with directions to the County employer to prepare a written settlement agreement. [¶] 10. The purported agreement was never authorized by [Hughes], never memorialized or otherwise reduced to writing as required and directed by the Hearing Officer, and never signed by any of the parties including [Hughes]; thus there is no valid and binding settlement agreement."

Further, accepting the County's argument on this point would violate basic rules of fairness. The County would get what it bargained for in the failed settlement agreement: the dismissal of the appeal. However, Hughes would get neither the benefit of the settlement agreement nor a hearing. That's not much of an "opportunity."

C. *The CSC Retained Jurisdiction to Hear Hughes's Administrative Appeal After He Retired Because the County of San Bernardino Personnel Rules (Personnel Rules) Did Not Divest the CSC of Jurisdiction*

The trial court cites to two cases, *Zuniga v Los Angeles County Civil Service Com.*, *supra*, 137 Cal.App.4th 1255 and *DHS*, *supra*, 180 Cal.App.4th at page 401, as dispositive that Hughes's retirement divested the CSC of jurisdiction to consider his administrative appeal. Both cases, which are also cited by the parties, interpret the Los Angeles County civil service rules to allow the commission to hear administrative appeals from former employees only in very narrow circumstances that were not present in those cases or in this case.

In *Zuniga*, the appellate court held that the trial court properly denied a deputy's petition for writ of mandate challenging the Los Angeles County Civil Service Commission's decision sustaining his 10-month suspension without pay. However, the appellate court did not reach the merits of the suspension because it held that the commission lost jurisdiction to adjudicate Zuniga's administrative appeal when Zuniga retired. The appellate court started by citing case law to the effect that a civil service board has only the very limited powers granted to it, and no more. "'A civil service

8

commission created by charter has only the special and limited jurisdiction expressly authorized by charter.  [Citations.]'" (*Zuniga v. Los Angeles County Civil Service Com.*, *supra*, 137 Cal.App.4th at p. 1259.)  The court then reviewed the civil service rules and determined that rule 4.01, which grants to any "'employee or applicant for employment'" the right to "'petition for a hearing before the commission'" applies only to persons who *remain* employees throughout the administrative process.  (*Id.* at pp. 1259, 1261.)  This is because the rules define an "employee" as "'any person holding a position in the classified service of the county.'"  (*Id.* at p. 1259.)  The rules do make some exceptions for persons no longer employed, such as those who have been wrongfully terminated, and, as do the County's civil service rules, those whose resignation was "'obtained by duress, fraud, or undue influence.'"  (*Id.* at pp. 1259-1260.)  The court used the existence of exceptions to imply a rule that persons who do not fall within the exceptions must remain actively employed for the entire pendency of an administrative appeal.  For the reasons discussed herein, we disagree with this reasoning.

Relying extensively on *Zuniga*, the appellate court in *DHS* affirmed the trial court's ruling that the Los Angeles County Civil Service Commission lost jurisdiction over the administrative appeal of a fired assistant nursing director when she voluntarily retired while the appeal was pending.  This decision relied on both *Zuniga*'s restrictive view of the powers of an administrative agency and on the previously discussed language of the Los Angeles County civil service rules.

9

However, in *Hall-Villareal v. City of Fresno* (2011) 196 Cal.App.4th 24, the Fifth District Court of Appeal affirmed the trial court's decision that a fired employee's application for retirement benefits did not divest that city's civil service board of jurisdiction to hear her pending appeal. The court based this, in part, on the particular wording of Fresno's charter and municipal code, which contained language different from that in the Los Angeles County civil service rules. The court held that the city did not demonstrate that its charter and municipal code required the same result as the Los Angeles rules. (*Id.* at p. 33.)[4] Most important for the purposes of this appeal, the court also differed from the courts in *Zuniga* and *DHS* when it placed the burden on the city to show that the civil service board lost jurisdiction of an existing appeal upon an employee's separation from employment, rather than placing the burden on the employee to show that the civil service board retained jurisdiction. The Fresno rules include language providing a procedure for retired employees to be reemployed by the city, and thus the employee could return to work for the city if the civil service board were to reverse the termination decision. The court consequently found that the employee's retirement did not divest the civil service board of jurisdiction to hear her appeal. (*Hall-Villareal v. City of Fresno*, *supra*, at p. 33.) In further support of our holding in this case,

---

[4] The *Hall-Villareal* court also bases its decision, in part, on the fact that the employee had already been separated from employment by the contested termination, and that the subsequent retirement did not change this. The court, in fact, disagreed with the *DHS* court's reading of *Zuniga* as establishing a "bright-line rule" that a person who is terminated and then retires thereby divests the civil service board of jurisdiction to hear an appeal. This fact situation is not present here, where Hughes was merely suspended, not terminated, before retiring during the pending administrative appeal.

10

we note that rule VII, sections 10 and 11 of the Personnel Rules similarly provides a procedure for employees who have resigned or retired to return to work.

These opinions lead us to search the rules applicable to Hughes's employment to determine whether a County employee who pursues an administrative appeal of an adverse personnel action is entitled to complete the appeal process if he resigns or retires before the process is complete, or whether the CSC loses its prior jurisdiction when an employee resigns or retires.

Here, rule X, section 9 of the Personnel Rules, revised July 24, 2007, governs *who* may appeal and *what* they may appeal. "A classified employee with regular status may appeal an order of suspension, demotion, reduction in salary step, or dismissal to the [CSC] and request a hearing. . . ."

The jurisdiction of the CSC is described in the following relevant part of rule II, section 16 of the Personnel Rules: "The Commission serves as a hearing body for adjudicating employee appeals on matters as set forth in these Rules. The Commission shall have jurisdiction only in regard to those *matters* that are specifically appealable to the Commission under those sections of the Personnel Rules where the right of appeal is expressly granted. The Personnel Rules shall not be grounds for a grievance, appeal or complaint except as provided for in these Rules. . . ." (Italics added.) We note that this section is restrictive regarding what kinds of matters can be appealed, but does not state that the CSC loses jurisdiction of a properly initiated administrative appeal when an employee resigns or retires.

11

We find no language in the Personnel Rules that directly or indirectly addresses what happens when a classified regular employee, who has properly begun the administrative appeals process with the CSC, later resigns or retires before the appeal is completed. The County argues that the Personnel Rules' language limiting the CSC's jurisdiction to "employee appeals" and authorizing only a "classified employee" to appeal from a suspension means the employee must *remain* an employee during the entirety of the appeal process. We have not found, nor have the parties pointed out, any terms of the Personnel Rules that compel this reading, or address the issue at all.

We agree with Hughes that the Personnel Rules' use of the term "classified employee with regular status" in rule X, section 9, merely distinguishes: (1) a classified employee, who has CSC appeal rights, from an unclassified employee, who does not,[5] and (2) an employee who has obtained "regular status" and has CSC appeal rights, from a probationary employee, who does not.[6] [7] The Personnel Rules cited above clearly and specifically grant or deny CSC appeal rights based only on (1) the subject matter of the

---

[5] "Persons in the Unclassified Service do not have Civil Service Commission appeal rights as they serve at the pleasure of the appointing authority . . . ." (Personnel Rules, rule III, section 2a.3.)

[6] "Disciplinary actions imposed during a probationary period are not subject to review or appeal to the [CSC] unless the employee has attained regular status in a previous classification since the employee's most recent date of hire." (Personnel Rules, rule VII, section 8.)

[7] "Employees . . . who have not attained regular status since their most recent date of hire may be dismissed, demoted, reduced in step, or suspended without right to review or appeal to the [CSC]." (Personnel Rules, rule X, section 4a.)

12

appeal and (2) an employee's status as classified or unclassified, regular or probationary. Nowhere do the Personnel Rules provide that regular classified employees who properly initiate an appeal lose the ability to complete the appeal when they resign or retire, or that the CSC thereby loses jurisdiction to complete the appeal.

There is not an abundance of case law on this issue. In addition to *Zuniga* and *DHS* on the one hand, and *Hall-Villareal* on the other, only *Service Employees Internat. Union, Local 1021 v. County of San Joaquin* (2011) 202 Cal.App.4th 449 (*SEIU*) is cited by both parties. *SEIU* held that an employee did not forfeit his right to compel arbitration of an employee discipline under a memorandum of understanding (MOU) simply by retiring. *SEIU* is helpful only inasmuch as it expressly points to the dichotomy of viewpoint within the three cases discussed above. *Zuniga* and *DHS* "concluded that . . . retirement was a voluntary resignation that automatically divested the civil service commission of jurisdiction to decide the disciplinary action," based at least, in part, on the courts' view that the Los Angeles County Civil Service Commission has only the very special and limited jurisdiction that the county's charter specifically granted it. (*SEIU*, *supra*, at p. 461.) Conversely, the "*Hall-Villareal* court [in declining to apply the holding in *DHS*] expressed doubt that there exists 'a bright-line rule that, if a person whose employment already has been terminated[8] seeks retirement benefits, the Civil

---

**8** We again recognize that the full reasoning of *Hall-Villareal* does not apply to this case because that court relied for its result in part on the fact that the employee was terminated and could return after retiring, whereas Hughes here is challenging an unpaid suspension. Despite this difference, we find *Hall-Villareal* to be relevant and persuasive because it takes a less restrictive view of the civil service board's jurisdiction. Further,

*[footnote continued on next page]*

Service Commission thereby loses jurisdiction to hear [an] appeal of the termination decision.' [Citation.]" (*Ibid.*) The *SEIU* court commented that it need not decide which case or cases reaches the better result because it decided the dispute in the employee's favor based on contract principals, since the dispute rested on the language of an MOU rather than on civil service rules. Nonetheless, we note that the court held that the employee's action in applying for retirement benefits did not forsake any of his rights under the MOU. We also note that the MOU, much like the rules we examine in the present case, did not address whether separation from employment cut off a retired or resigned employee from his or her right to complete an administrative challenge to a disciplinary action. Both simply used the term "employee," from which term the county in *SEIU* unsuccessfully argued for the exclusion of persons who retired after initiating a challenge to disciplinary action.

An update of the case law since briefing concluded in this case shows only two cases, both of which specifically concern the Los Angeles County civil service rules and, not surprisingly, cite extensively to *Zuniga* and *DHS*. We cite them more as an act of thoroughness than for any additional light they shed on the issue we must decide here. In *Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392, the appellate court's

_____

*[footnote continued from previous page]*
the *Hall-Villareal* court places the burden on the local government body to show that the board loses jurisdiction of a properly brought appeal, rather than on the employee to show that the board retains jurisdiction—especially given that the civil service rules in that case, as in the case at bar, do not address, at all, what happens to an ongoing appeal when the employee resigns or retires.

ruling that a sheriff's deputy's disability retirement did not divest the civil service commission of authority to review her unjustified discharge and to order her employment restored, was based on very specific factual grounds. The appellate court found that the deputy could not be deemed to have "established her intention to forever sever her employment status . . . or to forfeit her pending Civil Service Commission appeal" in the event she prevailed in challenging her discharge. This is because, in part, the deputy's disability was initiated by the county, not by her, was statutorily mandated by section 31725 without regard to her intentions, and the deputy could potentially be reinstated from disability retirement if her medical condition—a knee injury—improved. (*Hudson v. County of Los Angeles*, *supra*, at pp. 413-414.) Similarly, a County employee can potentially be reinstated from disability retirement if the medical condition improves, as provided in rule VII, sections 9 and 10 of the Personnel Rules.

In *Monsivaiz v. Los Angeles County Civil Service Com.* (2015) 236 Cal.App.4th 236, the appellate court found the civil service commission lost jurisdiction over the employee's claim for back pay and reinstatement when he died, because it had such jurisdiction only in connection with the restoration of an employee to service. The court made this ruling in connection with the surviving spouse's motion seeking to be named the legal successor in interest of her husband who had died during the pendency of a writ proceeding against the county. The court cited both *Zuniga* and *DHS* for a narrow view of the civil service commission's jurisdiction, and stressed that the death of a former employee, even more than a retirement or resignation, prevents restoration of

15

employment with the county. (*Monsivaiz v. Los Angeles County Civil Service Com.*, *supra*, at p. 241.)

Keeping in mind the case law in other appellate districts, we return to examining the Personnel Rules at issue here. As stated above, the Personnel Rules do not provide that the CSC's jurisdiction over the appeal of an adverse personnel action, once triggered by an employee's proper invocation of his right to appeal, is withdrawn when the employee leaves employment. Such a provision could easily have been included in these very detailed Personnel Rules. That point is central to this decision.

We also examine the practical effect of the County's proffered interpretation. An administrative appeal can stretch over a long period of time. In this case, the County served Hughes with the allegations of misconduct in September 2009, and an administrative hearing was set for *two years later*. It wasn't until June 2012, a full 33 months after Hughes was made officially aware of the allegations, that the County finally determined he was not entitled to complete the administrative appeal he had begun much earlier when he was healthy and able to work. As this example demonstrates, a lot can happen to a peace officer during the long course of an administrative appeal, including age, illness, and on-the-job injuries. It seems to us quite inequitable to require, as the trial court explicitly did here, that an ill, injured or retirement-age employee put at risk his well-being by continuing to work in order to see to completion his administrative appeal of an adverse personnel action.

16

Given both the lack of any provision in the Personnel Rules that deprives the CSC of jurisdiction over the properly initiated administrative appeal of an employee who later resigns or retires before the appeal is concluded, and the unfairness of implying such a rule in the absence of a specific provision, we conclude that the County here was required to hold an administrative hearing on Hughes's appeal. We distinguish the cases out of the Second Appellate District interpreting the Los Angeles County rules and adopt the applicable reasoning of the Fifth Appellate District in *Hall-Villareal*. If a San Bernardino County classified employee with regular status is, at the time of filing an administrative appeal, within the class of persons who may file an appeal, the County has failed to show any grounds in the Personnel Rules to deny that person a hearing if he or she thereafter resigns or retires. The County could provide such a distinction in its Personnel Rules as long as that distinction complies with the rules of due process and equal protection, but that distinction simply does not appear in the version of the Personnel Rules that appears in this record.

Because we conclude that Hughes is entitled to complete his administrative appeal as provided in the Personnel Rules, we need not address his remaining contentions.

### III. DISPOSITION

The judgment of dismissal is reversed. The matter is remanded to the trial court with directions to enter a new order overruling the County's demurrer.

Costs on appeal are awarded to Hughes.

CERTIFIED FOR PUBLICATION

17

CUNNISON
J.*

We concur:

RAMIREZ
P. J.
McKINSTER
J.

---

* Retired judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.