Filed 10/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARTIN DEIRO, | B296926 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS171413) |
| v. | |
| LOS ANGELES COUNTY CIVIL SERVICE COMMISSION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mary H. Strobel, Judge. Affirmed.

Castillo Harper and Michael A. Morguess for Plaintiff and Appellant.

Hausman & Sosa, Jeffrey M. Hausman, Larry D. Stratton and Vincent C. McGowan for Defendant and Respondent Los Angeles County Sheriff's Department.

No appearance for Defendant and Respondent Los Angeles County Civil Service Commission.

———————————————

## SUMMARY

A deputy sheriff who has obtained and continues to receive service-connected disability retirement benefits is no longer an employee of the county. Consequently, his appeal to the Civil Service Commission of his discharge by the Los Angeles Sheriff's Department, filed before his disability retirement, is no longer viable. The commission has no authority to order reinstatement or any other relief to a retired person whose future status as an employee is not at issue. The commission properly dismissed the retired deputy sheriff's disciplinary appeal. We affirm the trial court's denial of a writ of mandate.

## FACTS

Plaintiff Martin Diero, who began working for the Los Angeles County Sheriff's Department in 1997, was injured on duty on May 30, 2012. He continued to work through October 3, 2013, after which he had the first of two surgeries for the injury (October 4, 2013 and September 9, 2014). He could not return to work after October 4, 2013, and remained on leave thereafter.

On May 1, 2015, plaintiff applied to the Los Angeles County Employees Retirement Association (LACERA) for a service-connected disability retirement. The department did not oppose his application.

On July 17, 2015, the department served plaintiff with a letter of intent to terminate his employment, in connection with conduct the department alleged brought discredit to plaintiff and the department. After a predisciplinary meeting, on August 13, 2015, the department notified plaintiff of his discharge, effective at the close of business on August 12, 2015. Plaintiff timely appealed the discharge to the Civil Service Commission, and on

2

September 15, 2015, the commission referred the matter to a hearing officer for evidentiary hearings.

A few months later, on January 6, 2016, while the disciplinary proceedings were pending, LACERA's Board of Retirement granted plaintiff's application for a service-connected disability retirement, with the effective date to be determined. LACERA served notice of the board's decision a few days later, on January 11, 2016.

On August 22, 2016, LACERA issued a notice to plaintiff stating that, "[p]er your discussion with LACERA staff, your effective date of retirement is August 13, 2015," the day after plaintiff's discharge.

Despite plaintiff having retired, on September 26 and November 4, 2016, the department and plaintiff participated in hearings on plaintiff's appeal of his discharge. The department did not bring plaintiff's retirement to the attention of the commission until late April 2017. Meanwhile, on March 7, 2017, the hearing officer issued a proposed decision recommending plaintiff's discipline be reduced to a 30-day suspension. On April 12, 2017, the commission's agenda included a proposed decision to accept the recommendation of the hearing officer to reduce plaintiff's discharge to a 30-day suspension.

On April 26, 2017, the department filed a motion to dismiss the appeal on the ground plaintiff had retired, and therefore the commission lacked jurisdiction over any appeal relating to his employment.

On August 16, 2017, the commission granted the department's motion to dismiss plaintiff's appeal.

Plaintiff filed a verified petition for writ of mandate, naming the commission and the department as respondents, to

3

compel the commission to complete his administrative appeal. The commission filed a notice stating it had no beneficial interest in the outcome of the proceedings and would make no additional appearance in the matter. Plaintiff and the department stipulated that the issues raised in plaintiff's petition could be determined pursuant to ordinary mandate (Code Civ. Proc., § 1085), without an administrative record, and the trial court so ordered.

On July 20, 2018, plaintiff had another surgery related to his on-duty injury, and as of November 27, 2018, was "still healing."

The parties briefed the matter in November and December 2018. With his reply papers filed January 7, 2019, plaintiff submitted a supplemental declaration. He asserted for the first time that if he were to prevail in his appeal and were ordered reinstated, any retroactive salary would change his disability retirement date to a later date, and this "would have also affected my retirement allowance and contributions to my retiree health benefits . . . because of seniority credits and salary increases I expected to receive."

The trial court denied plaintiff's petition. The court observed that "[n]ew issues raised in reply are improper and may be disregarded," and concluded on the merits the commission lacked authority to decide the appeal or reinstate plaintiff. The court entered judgment in favor of the department on February 22, 2019, and this timely appeal followed.

## DISCUSSION

As the trial court observed, the material facts in this case are undisputed. The only issue is whether the commission retained jurisdiction to decide plaintiff's appeal after he retired.

4

Lack of jurisdiction "constitutes a pure question of law" (*Zuniga v. Los Angeles County Civil Service Com.* (2006) 137 Cal.App.4th 1255, 1260 (*Zuniga*)), and so our review is de novo.

We hold the commission properly dismissed plaintiff's appeal because it has no jurisdiction to order reinstatement, or any form of wage relief, to a retired person whose "future status as an employee by definition is no longer at issue." (*County of Los Angeles Dept. of Health Services v. Civil Service Com. of County of Los Angeles* (*Latham*) (2009) 180 Cal.App.4th 391, 401 (*Latham*).) It does not matter whether the retirement results from the retiree's own decision to retire, or from a decision by the retirement board that he or she is permanently incapacitated from doing his job. In either case, the effect is the same: the retiree is no longer an employee, and the commission no longer has the authority to order reinstatement or wage relief.

## 1. The Applicable Legal Principles

The commission's jurisdiction derives from the Charter of the County of Los Angeles. (*Monsivaiz v. Los Angeles County Civil Service Com.* (2015) 236 Cal.App.4th 236, 240.) " 'A civil service commission created by charter has only the special and limited jurisdiction expressly authorized by the charter.' " (*Zuniga, supra,* 137 Cal.App.4th at p. 1259.) The charter specifies that the commission is to serve as an appellate body in accordance with specified charter provisions, and as provided in the Civil Service Rules. (*Zuniga,* at p. 1259.) "Thus, the Commission has authority to act as an appellate body in very narrow circumstances related to appeals by employees (or applicants for employment) of discrimination claims, or appeals by employees regarding 'discharges and reductions.' " (*Monsivaiz,* at pp. 240-241.)

Rule 2.24 of the Civil Service Rules (codified in appendix 1 of title 5 of the Los Angeles County Code) defines an employee as "any person holding a position in the classified service of the county.  It includes officers."

Several cases have held, under varying circumstances, that an employee who properly appealed his discharge or other discipline, but then resigned, retired, or died, was no longer an employee, and the commission no longer had jurisdiction to continue to adjudicate his appeal.

In *Zuniga*, a deputy sheriff challenged a suspension without pay, but then retired from the department during the suspension period.  (*Zuniga, supra,* 137 Cal.App.4th at pp. 1257-1258.)  The court found the commission "lacked jurisdiction to adjudicate [the plaintiff's] claim after he resigned from the Department."  (*Id.* at p. 1258.)  The court concluded there was "no provision in the charter granting the Commission authority to hear a wage claim brought by a former civil servant."  (*Id.* at p. 1259.)

A few years later, the Court of Appeal decided a case where the plaintiff filed a timely appeal of her discharge, but then retired while the proceedings were pending.  (*Latham, supra,* 180 Cal.App.4th 391.)  After observing that the commission initially had jurisdiction over the plaintiff's appeal of her discharge, *Latham* concluded:  "*Zuniga* stands for the bright-line proposition that, where an employee retires during the pendency of a civil service appeal, her future status as an employee by definition is no longer at issue.  The then pending appeal becomes a 'wage claim brought by a former civil servant,' and under *Zuniga* the Commission has no jurisdiction over such a wage claim because neither the charter nor Civil Service Rules

6

vest such jurisdiction. (*Zuniga, supra*, 137 Cal.App.4th at p. 1259.) In short, the Commission has authority to address only matters involving a member of the civil service, and a person who has retired is no longer a member of the civil service." (*Latham, supra,* 180 Cal.App.4th at p. 401.)

In *Monsivaiz*, we held that the death of a plaintiff during a writ proceeding challenging his discharge "divested [the commission] of jurisdiction, thereby mandating a dismissal of plaintiff's writ proceeding." (*Monsivaiz, supra,* 236 Cal.App.4th at p. 238.) We pointed out that a deceased former employee "does not fit within the description of 'employee' " under civil service rule 2.24. (*Monsivaiz,* at p. 241.) We also observed that the commission "can only resolve a claim for backpay in connection with the restoration of an employee to service." (*Ibid.*)

## 2. Plaintiff's Contentions: The *Hudson* Case

There is one additional precedent involving, as here, a disability retirement, and reaching a different result on entirely different facts: *Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392 (*Hudson*). *Hudson* concluded the *Zuniga* and *Latham* decisions did not apply "under the circumstances" surrounding the *Hudson* plaintiff's discharge and disability retirement. (*Hudson,* at p. 413.) *Hudson* is founded in the egregious circumstances permeating that case and does not control our conclusion in this case.

Plaintiff's contention the commission has jurisdiction hinges entirely on *Hudson*, to which most of plaintiff's brief is devoted. *Hudson* did not hold, as plaintiff would have it, that the commission retains jurisdiction over a discharge claim in any case involving a disability retirement. The commission has no authority to order a permanently disabled employee to return to

work.  In *Hudson,* by contrast, the "tangled web" in which the plaintiff was caught (*Hudson, supra,* 232 Cal.App.4th at p. 406) showed her future status as an employee remained at issue.

In *Hudson*, as here, the plaintiff was injured, the department fired the plaintiff for misconduct, the plaintiff appealed the discharge, and then LACERA found the plaintiff to be permanently disabled.  There, the similarities end.

In *Hudson*, LACERA found the plaintiff was permanently disabled by an injury that was *not* service connected, so she was not entitled to service-connected disability benefits; and because she had worked for the department for less than five years, she was entitled to no retirement benefits at all.  (*Hudson, supra,* 232 Cal.App.4th at p. 397.)  In contrast, here, plaintiff sought and obtained a service-connected disability retirement with full retirement benefits.

In *Hudson*, the plaintiff's appeal of her discharge culminated in a final decision by the commission finding her discharge unjustified and requiring the department to restore her employment.  The department did not challenge the commission's jurisdiction before its decision became final and did not appeal the commission's decision.  But the department did not comply with the commission's order, instead informing the plaintiff of her "medical release" from her position as deputy sheriff. (*Hudson, supra,* 232 Cal.App.4th at p. 397.)

The *Hudson* plaintiff then filed a second appeal to the commission, alleging retaliation for her successful challenge to her wrongful discharge.  (*Hudson, supra,* 232 Cal.App.4th at p. 397.)  While that second appeal was pending, she and the department entered into a written settlement agreement, under which she would return to work in a 120-day custody assistant

8

assignment; undergo a medical reevaluation by LACERA; be restored as deputy sheriff if LACERA determined she was no longer disabled; and hired as a permanent custody assistant if LACERA determined she remained disabled from performing the duties of a deputy sheriff.  *She did in fact return to work as a custody assistant pursuant to the written agreement* (*id.* at p. 398), and obtained doctors' releases finding her fit for duty as a deputy sheriff (*id.* at pp. 398-399).  But LACERA refused to reevaluate her because, due to financial necessity, she had withdrawn her contributions and was no longer a LACERA member.  (*Id.* at p. 398.)  Her 120-day work assignment with the department expired, leaving her without employment, and then the department refused to reinstate her to any position.  (*Id.* at p. 399.)  After that, she sued both the department and LACERA, alleging claims for breach of contract, writ of mandate, civil rights violations, and more.  (*Id.* at pp. 399-400.)

We will not further lengthen this opinion with other details of the "unique, and somewhat tortured, factual chronology involved" in *Hudson*.  (*Monsivaiz, supra,* 236 Cal.App.4th at p. 242.)  The ensuing litigation was equally complex.  Suffice it to say that, when judgments were entered for the department and LACERA—on grounds that did not involve lack of jurisdiction by the commission—the plaintiff appealed, and the department challenged the commission's jurisdiction to render the original reinstatement order that the department had ignored.  (*Hudson, supra,* 232 Cal.App.4th at pp. 405, 411.)  The department contended the commission's authority to review the propriety of the plaintiff's discharge had ended when LACERA first determined the plaintiff was permanently disabled (*id.* at p. 411), relying on the *Zuniga/Latham* principles.

9

It is not surprising, given the *Hudson* facts, that the court refused to apply the "bright-line" rule of *Zuniga* and *Latham* "under the circumstances of this case." (*Hudson, supra,* 232 Cal.App.4th at p. 413.) The court did so by contrasting the "voluntary" resignation and retirement in those cases with the conduct of the *Hudson* plaintiff—who fought tooth and nail not only to be restored to her job with backpay, but also to force LACERA to reevaluate her injury so that she *could* return to her job.

*Hudson* contrasted the *Zuniga* and *Latham* voluntary decisions to end employment with the *Hudson* plaintiff's circumstances, concluding her disability retirement "was not necessarily an unequivocal expression of an intention to forever abandon her Department employment." (*Hudson, supra,* 232 Cal.App.4th at p. 413.) *Hudson* also pointed out that LACERA has the authority to reevaluate the disability status of retirement beneficiaries, and determine whether they are still incapacitated for service (*ibid.*),[1] something the *Hudson* plaintiff sought from LACERA and indeed sued LACERA to obtain.

---

[1] Government Code section 31729 states: "The board may require any disability beneficiary under age 55 to undergo medical examination. . . . Upon the basis of the examination the board shall determine whether the disability beneficiary is still physically or mentally incapacitated for service in the office or department of the county or district where he was employed and in the position held by him when retired for disability." Section 31730 states: "If the board determines that the beneficiary is not incapacitated, and his or her employer offers to reinstate that beneficiary, his or her retirement allowance shall be canceled forthwith, and he or she shall be reinstated in the county service pursuant to the regulations of the county or

10

Here, plaintiff offers *Hudson* as authority for a new bright-line rule in the case of disability retirement:  that when an employee applies for disability retirement, is subsequently discharged, timely appeals, and then is granted a disability retirement, the commission retains jurisdiction over his civil service appeal, no matter what the circumstances.  According to plaintiff, this is because permanent incapacity is not voluntary and is determined by the LACERA retirement board (Gov. Code, § 31725), without regard to the employee's intention.  And, because LACERA has the authority to reevaluate the incapacity of a disability retiree under age 55 (see fn. 1, *ante*), a disability retiree's future employment status "remains at issue," and "may change in the future."  We disagree with plaintiff's conclusion.

*Hudson* said nothing about displacing the *Zuniga/Latham* rule in the case of any disability retirement.  To the extent *Hudson* may be read to suggest that the commission retains jurisdiction unless a retiree "unequivocally demonstrate[s] his intention and determination not to seek restoration of his employment" (*Hudson, supra,* 232 Cal.App.4th at p. 412), and that a disability retiree never does so, we disagree with that analysis.  The essence of the *Zuniga/Latham* rule is that a plaintiff's future status as an employee is not at issue after he has retired.  In the ordinary case, this is just as true of disability retirees as it is of retirees who choose to retire after years of

district for reemployment of personnel."  Section 31733 states, in part:  "If a disability beneficiary is determined by the board to be no longer incapacitated and re-enters the service of a public agency covered by the retirement system under which he retired, his disability retirement allowance shall cease immediately upon such re-entry."

11

service:  their future status as employees is not at issue, unless they or their former employer choose to place it in issue.  The commission no longer has the authority to restore a disability retiree to employment; only LACERA can determine that a retiree is not, in fact, permanently incapacitated.  (Gov. Code, § 31725.)  As in any other retirement case, only a wage claim remains, over which the charter gives the commission no authority.  (*Zuniga, supra,* 137 Cal.App.4th at p. 1259.)[2]

The existence of a case like *Hudson*—where the commission *did* order the plaintiff's employment restored, where the plaintiff actively sought LACERA's reevaluation so she *could* return to work, and where the department actually agreed with the plaintiff to return her to work and *did* return her to work in an unsworn position during the course of the proceedings—does not change the general rule.  It is the exception, on egregious facts— and it was clear throughout the long saga that the plaintiff's future status as an employee *was* at issue.  Nothing in this case suggests anything of the sort.

---

[2]    Plaintiff cites *Hughes v. County of San Bernardino* (2016) 244 Cal.App.4th 542, saying *Hughes* supports the proposition that we are not compelled to read the charter as we do.  *Hughes* held that San Bernardino County's personnel rules did not deprive its civil service commission of jurisdiction over a properly initiated administrative appeal of an employee who later resigns or retires before the appeal is concluded.  (*Id.* at p. 553; see *ibid.* ["the County has failed to show any grounds in the Personnel Rules to deny that person a hearing if he or she thereafter resigns or retires"].)  The *Zuniga* line of cases concern the Los Angeles County charter and civil service rules, not the San Bernardino County personnel rules.

Plaintiff insists that LACERA has "a duty to re-evaluate disability retirees," and so he "may . . . face reinstatement in the future." This is complete speculation. Certainly, LACERA has the authority to reevaluate plaintiff. (Gov. Code, § 31729.) But there is not the slightest intimation in this record that he or the department would seek such a reevaluation from LACERA. And unless they do, there is nothing the commission can do to restore plaintiff to employment. As we said in *Monsivaiz*, where the plaintiff's death prevented the restoration of employment, there was "no act the superior court could mandate the Commission to perform that was within its authority to undertake." (*Monsivaiz, supra,* 236 Cal.App.4th at p. 242.)

## DISPOSITION

The judgment is affirmed. The department shall recover costs on appeal.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

STRATTON, J.

13